1  FRED M. BLUM, ESQ. (SBN 1015860
   RUBEN RUIZ, ESQ. (SBN 241729)
2  BASSI, MARTINI, EDLIN & BLUM LLP
   351 California Street, Suite 200
3  San Francisco, CA 94104
   Telephone:    (415) 397-9006
4  Facsimile:    (415) 397-1339

5  Attorneys for Defendant
   GEOSTAR CORPORATION, GEOSTAR FINANCIAL SERVICES CORPORATION, and
6  TONY FERGUSON

7

8

9                        UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA0- SAN JOSE

11                                      Case No.  **C08 03898**

12 PETER FORTENBAUGH and BETTY LEE,     )
   in their capacity as Trustees of THE PETER  )
13 FORTENBAUGH TRUST, a California Trust, )   **DECLARATION OF RUBEN RUIZ IN**
                                         )   **SUPPORT OF DEFENDANTS GEOSTAR**
14              Plaintiffs,              )   **CORPORATION, GEOSTAR FINANCIAL**
                                         )   **SERVICES CORPORATION, AND TONY**
15         vs.                           )   **FERGUSON'S NOTICE FOR REMOVAL**
                                         )   **TO FEDERAL COURT**
16 CLASSICSTAR FINANCIAL SERVICES,       )
   INC., a Delaware Corporation, GEOSTAR )   Superior Court of the State of California
17 CORPORATION, a Delaware Corporation,  )   County of Santa Clara
   GEOSTAR FINANCIAL SERVICES            )   Case No. 107CV084507
18 CORPORATION, a Delaware Corporation,
   TONY FERGUSON, an individual, and DOES
19 1 through 30, inclusive,

20              Defendants.

21

22 **TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR**

23 **THE NORTHERN DISTRICT OF CALIFORNIA:**

24         I, Ruben Ruiz, declare as follows:

25         1.      I am an attorney at law admitted to practice before the United States District

26 Court Northern District of California.  I am an attorney at the law firm of Bassi, Martini, Edlin &

27 Blum, LLP, counsel of record for <u>GEOSTAR CORPORATION</u>, <u>GEOSTAR FINANCIAL</u>

28 <u>SERVICES CORPORATION</u>, and <u>TONY FERGUSON</u> (collectively "NEW DEFENDANTS").

49110                                    1

DECL. OF RUBEN RUIZ IN SUPP. OF NEW DEFENDANTS' NOTICE FOR REMOVAL

FILED

2008 AUG 14  P 3:39

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1   I have personal knowledge of the facts set forth in this Declaration and, if called as a witness,

2   could and would testify competently to such facts under oath.

3       2.    On July 15, 2008, I was served on behalf of NEW DEFENDANTS with Plaintiffs

4   PETER FORTENBAUGH and BETTY LEE, in their capacity as Trustees of THE PETER

5   FORTENBAUGH TRUST, a California Trust's, ("FORTENBAUGH") First Amended

6   Complaint ("FAC"). A true and correct copy of the FAC is attached as Exhibit A to this

7   declaration.

8       3.    A true and correct copy of FORTENBAUGH's original Complaint is attached as

9   Exhibit B.

10      4.    In response to FORTENBAUGH's original Complaint, CLASSICSTAR filed an

11  Answer and Cross-Claim on July 9, 2007.

12      5.    A true and correct copy of CLASSICSTAR FINANCIAL SERVICES, INC.'s

13  Voluntarily Dismissal is attached at Exhibit C.

14      6.    FIRST SOURCE WYOMING, INC. ("FSW"), a second cross-claimant, filed a

15  permissive cross-claim against FORTENBAUGH for unjust enrichment on July 9, 2007.

16      7.    A true and correct copy of FIRST SOURCE WYOMING, INC.'s Voluntarily

17  Dismissal is attached at Exhibit D

18      8.    Promptly after the filing of this Notice of Removal in the United States District

19  Court for the Northern District of California, written notice of such filing and supporting

20  documents will be given by the undersigned to counsel for FORTENBAUGH, including Request

21  for Judicial Notice, and supporting declarations of Ruben Ruiz, Milton J. Evans, Jr. and Tony

22  Ferguson. A written notice and will also be filed with the Clerk of the Superior Court of the

23  State of California, in and for the County of Santa Clara, along with supporting documents. A

24  true and correct copy of the Notice to be filed with the Clerk of the Superior Court of the State

25  of California, in and for the County of Santa Clara is attached as Exhibit E (without exhibits).

26  //

27  //

28  //

49110

DECL. OF RUBEN RUIZ IN SUPP. OF NEW DEFENDANTS' NOTICE FOR REMOVAL

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.  Executed this 13th day of August, 2008 in San Francisco,

3    California.

4

5                                BASSI, MARTINI, EDLIN & BLUM LLP

6

7                                By:_____

8                                    RUBEN P. RUIZ
                                     Attorneys for Defendant
9                                    GEOSTAR CORPORATION, GEOSTAR
                                     FINANCIAL SERVICES CORPORATION, AND
10                                   TONY FERGUSON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49110

DECL. OF RUBEN RUIZ IN SUPP. OF NEW DEFENDANTS' NOTICE FOR REMOVAL

# EXHIBIT A

GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
JEREMY T. KAMRAS (No. 237377)
Email: jkamras@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
        FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:   415/434-1600
Facsimile:    415/217-5910

Attorneys for Plaintiffs
PETER FORTENBAUGH and BETTY LEE,
in their capacity as Trustees of THE PETER
FORTENBAUGH TRUST

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| PETER FORTENBAUGH and BETTY LEE, in their capacity as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust,<br><br>Plaintiffs,<br><br>v.<br><br>CLASSICSTAR FINANCIAL SERVICES, INC., a Delaware corporation, GEOSTAR FINANCIAL SERVICES CORPORATION, a Delaware corporation, GEOSTAR CORPORATION, a Delaware corporation, TONY FERGUSON, an individual, and DOES 4 through 30, inclusive,<br><br>Defendants.<br><br>FIRST SOURCE WYOMING, INC., a Delaware Corporation,<br><br>Cross-Complainant,<br><br>v.<br><br>PETER FORTENBAUGH and BETTY LEE, in their capacity as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust, and ROES 1 through 30, inclusive,<br><br>Respondent. | No. 107CV084507<br><br>Action Filed: April 24, 2007<br><br>[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES FOR:<br>1. BREACH OF CONTRACT: PURCHASE AGREEMENT;<br>2. UNJUST ENRICHMENT;<br>3. BREACH OF CONTRACT: ESCROW AGREEMENT;<br>4. DECEIT/FRAUD;<br>5. NEGLIGENT MISREPRESENTATION<br><br>DEMAND FOR TRIAL BY JURY |

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN A Professional Corporation

1   COMES NOW, Plaintiffs and Cross-Defendants PETER FORTENBAUGH and
2   BETTY LEE, in their capacity as Trustees of THE PETER FORTENBAUGH TRUST, a
3   California Trust, and for causes of action against Defendant CLASSICSTAR FINANCIAL
4   SERVICES, INC., Defendant GEOSTAR FINANCIAL SERVICES CORPORATION,
5   Defendant GEOSTAR CORPORATION, Defendant TONY FERGUSON, and DOES 4
6   through 30, allege as follows:

**PARTIES**

7

8       1.    Plaintiffs and Cross-Defendants PETER FORTENBAUGH and BETTY LEE, in
9   their capacity as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust
10  ("Plaintiffs"), are individuals residing in Santa Clara County, State of California.

11      2.    Plaintiffs are informed and believe, and on that basis allege, that Defendant
12  CLASSICSTAR FINANCIAL SERVICES, INC. ("ClassicStar") is a Delaware corporation
13  with its principal place of business located in the State of Michigan.

14      3.    Plaintiffs are informed and believe, and on that basis allege, that Defendant
15  GEOSTAR FINANCIAL SERVICES CORPORATION ("GeoStar Financial") is a
16  Delaware corporation with its principal place of business located in the State of Michigan.

17      4.    Plaintiffs are informed and believe, and on that basis allege, that Defendant
18  GEOSTAR CORPORATION ("GeoStar") is a Delaware corporation with its principal place
19  of business located in the State of Michigan.

20      5.    Defendant TONY FERGUSON ("Ferguson") is a natural person who, Plaintiffs
21  are informed and believe, and on that basis allege, at all relevant times was a director, officer
22  and/or substantial shareholder of ClassicStar, GeoStar Financial and/or GeoStar, and resides
23  primarily in the State of Florida.

24      6.    Defendants Does 4 through 30 are fictitious names of those defendants whose
25  true names are unknown to Plaintiffs and whose true capacities, whether as individuals,
26  corporations, partnerships, or otherwise, are also unknown.   When the true names or
27  capacities are ascertained, Plaintiffs will amend this First Amended Complaint by inserting
28  the true names and capacities. Plaintiffs are informed and believe, and on that basis allege,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

-1-

1  that at all relevant times, each of the defendants named in this complaint as Does 4 through

2  30 was responsible in some manner for the events and happenings alleged in this First

3  Amended Complaint.

4      7.   At all times herein mentioned, each of Defendants was the agent, employee,

5  principal, alter ego and co-conspirator of each other, and in doing the acts herein alleged,

6  were acting within the course and scope of that agency, employment, representation or

7  relationship, and with the knowledge, consent, and approval of each of the other Defendants.

8  **VENUE**

9      8.   Venue is proper in this Court pursuant to California Code of Civil Procedure

10  §395.5, because the agreements at issue were made and were to be performed, and their

11  breach and injury to the Plaintiffs occurred, in Santa Clara County, State of California.

12      9.   The deceit/fraud and/or negligent misrepresentation by Defendant Ferguson was

13  meant to and did induce conduct by Plaintiffs in Santa Clara County, State of California,

14  which conduct caused injury to Plaintiffs in Santa Clara County, State of California.

15      10.   Venue is further proper in this Court because Defendant ClassicStar has

16  consented to jurisdiction in this Court by previously appearing in this matter for general

17  purposes.

18  **GENERAL ALLEGATIONS**

19      11.   On or about September 30, 2005, Plaintiffs and Defendant ClassicStar entered

20  into a written Equine and Working Interest Purchase Agreement (the "Purchase

21  Agreement") in Santa Clara County, California. A true and correct copy of the Purchase

22  Agreement is attached hereto as Exhibit A and incorporated herein.

23      12.   The Purchase Agreement provides that Defendant ClassicStar was to purchase

24  certain assets, including Plaintiffs' mare-lease business, in exchange for (a) $6.1 million plus

25  interest thereon at a rate of 6% accruing as of September 1, 2005 and (b) the assumption by

26  ClassicStar of outstanding indebtedness owed by Plaintiffs to the National Equine Lending

27  Corporation.

28      13.   ClassicStar's payment obligations under the Purchase Agreement were to have

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

-2-

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

1  been secured by collateral provided by Defendant GeoStar Financial, as set forth in the

2  Escrow Agreement (the "Escrow Agreement") dated September 30, 2005. A copy of the

3  Escrow Agreement, alleged by GeoStar Financial Corporation in its Answer filed in

4  *Fortenbaugh-Lee Investments, LLC. v. GeoStar Financial Corp.*, No. 06-5513 (N.D. Cal.

5  filed Oct. 30, 2006), to be a "genuine copy," and pursuant to which GeoStar Financial

6  Corporation alleged to have made "set off payments," is attached hereto as Exhibit B and

7  incorporated herein.

8  **ALTER EGO ALLEGATIONS**

9      14.  Plaintiffs are informed and believe, and on that basis allege, that there exists, and

10  at all times relevant there existed, a unity of interest and ownership between and among

11  Defendants ClassicStar, GeoStar Financial and GeoStar, such that any individuality and

12  separateness between them have ceased, and Defendant GeoStar is the alter ego of

13  Defendants ClassicStar and GeoStar Financial. Plaintiffs base this allegation in part upon

14  the allegations set forth in Paragraphs 15-21.

15      15.  Plaintiffs are informed and believe, and on that basis allege, that Defendant

16  Ferguson, who negotiated the terms of the Purchase Agreement on behalf of ClassicStar and

17  the terms of the Escrow Agreement on behalf of GeoStar Financial, is, and at all times

18  relevant was, a director, officer and/or substantial shareholder of Defendants ClassicStar,

19  GeoStar Financial and GeoStar.

20      16.  Plaintiffs are informed and believe, and on that basis allege, that Defendant

21  GeoStar is, and at all times relevant was, a substantial shareholder of and/or shared common

22  ownership with, Defendants ClassicStar and GeoStar Financial.

23      17.  The address provided for Defendant ClassicStar in the Purchase Agreement is,

24  and at all times relevant was, also the principal place of business for Defendant GeoStar, and

25  Plaintiffs are informed and believe, and on that basis allege, that Defendants ClassicStar and

26  GeoStar employed some of the same employees and agents.

27      18.  The address provided for Defendant GeoStar Financial in the Escrow Agreement

28  is, and at all times relevant was, also the principal place of business for Defendant GeoStar,

HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN

-3-

1    and Plaintiffs are informed and believe, and on that basis allege, that Defendants GeoStar

2    Financial and GeoStar employed some of the same employees and agents.

3        19.   Plaintiffs are informed and believe, and on that basis allege, that Defendant

4    ClassicStar is, and at all times relevant was, so inadequately capitalized that, compared with

5    its obligations under the Purchase Agreement, its capitalization was illusory.

6        20.   Plaintiffs are informed and believe, and on that basis allege, that Defendant

7    GeoStar Financial is, and at all times relevant was, so inadequately capitalized that,

8    compared with its obligations under the Escrow Agreement, its capitalization was illusory.

9        21.   Plaintiffs are informed and believe, and on that basis allege, that to the extent

10   Defendants ClassicStar and GeoStar Financial at any time had assets, Defendants Ferguson

11   and others so completely controlled, dominated, managed, and operated Defendants

12   ClassicStar, GeoStar Financial and GeoStar and intermingled the assets of each to suit the

13   convenience of Defendant Ferguson and others.   For example, Defendant ClassicStar's

14   payment obligations under the Purchase Agreement were to have been secured by collateral

15   provided, not by Defendant ClassicStar, but by Defendant GeoStar Financial as set forth in

16   the Escrow Agreement.  Typically, however, Defendant Ferguson and others would place

17   any assets of Defendants ClassicStar and GeoStar Financial in the name of Defendant

18   GeoStar in order to evade payment of the obligations owed to Plaintiffs.

19       22.   Based on the above and such other information, Plaintiffs are informed and

20   believe, and on that basis allege, that Defendants ClassicStar and GeoStar Financial are, and

21   at all times relevant were, mere shells and shams that were conceived, intended, and used by

22   Defendants GeoStar and Ferguson and others as a device to avoid liability under the

23   Purchase Agreement and Escrow Agreement and for the purpose of substituting financially

24   insolvent corporations in the place of Defendant GeoStar.

25       23.   Adherence to the fiction of the separate existence of Defendants ClassicStar and

26   GeoStar Financial as entities distinct from Defendant GeoStar, and of Defendant Ferguson

27   as separate from any of these entities, would therefore permit an abuse of the corporate

28   privilege and would sanction fraud and promote injustice in that it would permit, as

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

-4-

1  Defendants GeoStar and Ferguson intended, Defendants ClassicStar and GeoStar Financial

2  to breach the Purchase Agreement and Escrow Agreement without permitting Plaintiffs any

3  recourse.

**FIRST CAUSE OF ACTION**
**Breach of Contract: Purchase Agreement**
**Against ClassicStar and GeoStar**

4

5

6      24.  Plaintiffs re-allege and incorporate Paragraphs 1 through 23 above as though

7  fully set forth herein.

8      25.  The Purchase Agreement between Plaintiffs and Defendant ClassicStar provides

9  for Defendant ClassicStar to make principal and interest payments to the Trust in accordance

10  with the Payment Schedule attached as Exhibit B to the Purchase Agreement.

11      26.  Defendant ClassicStar made the first payment of $314,038.36 owed under the

12  Purchase Agreement, which payment was due as of September 15, 2005.

13      27.  Pursuant to the Payment Schedule, Defendant ClassicStar was and is required to

14  make, on the dates set forth, the following additional payments:

15      4/1/06   - $1,191,907.75

    7/1/06   - $  472,360.60

16      10/1/06  - $  466,330.55

    1/1/07   - $  460,300.50

17      4/1/07   - $  454,270.45

    7/1/07   - $  448,240.40

18      10/1/07  - $  442,210.35

    1/1/08   - $  436,180.30

19      7/1/08   - $1,060,755.02

    1/1/09   - $1,030,377.51

20      28.  Defendant ClassicStar has breached the Purchase Agreement by failing to make

21  the following payments:  (a) $1,191,907.75, due on April 1, 2006; (b) $472,360.60, due on

22  July 1, 2006; (c) $466,330.55, due on October 1, 2006; (d) $460,300.50, due on January 1,

23  2007;  (e) $454,270.45,  due on April 1, 2007;  (f) 448,240.40, due on July 1, 2007;

24  (g) $442,210.35, due on October 1, 2007; (h) 436,180.30, due on January 1, 2008; and

25  (i) $1,060,755.02, due on July 1, 2008.

26      29.  At all relevant times herein, Plaintiffs have performed all of the covenants and

27  promises required on their part to be performed in accordance with the terms and conditions

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*a Professional Corporation*

-5-

1   of the Purchase Agreement.

2       30.  Based on the above breach, Plaintiffs made a written demand on August 21, 2006

3   (the "Demand Letter") that Defendant ClassicStar make the payments which were due on

4   April 1, 2006, and on July 1, 2006. A copy of the referenced Demand Letter is attached

5   hereto as Exhibit C.

6       31.  Defendant ClassicStar has not responded to the Demand Letter, and has not made

7   the April 1, 2006 payment or the July 1, 2006 payment or any subsequent payment.

8       32.  Defendant ClassicStar's failure to even acknowledge or respond to the Demand

9   Letter, as well as its failure to make the April 1, 2006, July 1, 2006, October 1, 2006,

10  January 1, 2007, April 1, 2007, July 1, 2007, October 1, 2007, January 1, 2008, and July 1,

11  2008 payments, evidence that it is fruitless for Plaintiffs to make additional demands for

12  additional payments which are currently owing, or which may become owing under the

13  Purchase Agreement.

14      33.  Defendant ClassicStar, by virtue of the above conduct, has additionally

15  repudiated and/or anticipatorily breached the Purchase Agreement. As such, all payment

16  amounts set forth on the Payment Schedule are immediately due and owing.

17      34.  As a direct and proximate result of the breach and anticipatory breach of the

18  Purchase Agreement by Defendant ClassicStar, Plaintiffs have sustained damages in the

19  amount of at least the sum of the missed and repudiated principal and interest payments as

20  set forth in the Payment Schedule ($6,462,933.43) plus further interest at an annual rate of

21  6% as permitted by the Purchase Agreement ($330,535.06 as of July 9, 2008), for a total of

22  $6,793,468.49 as of July 9, 2008, together with interest as allowed by law.

23      35.  Because Defendant GeoStar is the alter ego of Defendant ClassicStar, both are

24  jointly and severally liable for the above-stated damages.

25  **SECOND CAUSE OF ACTION**<br>**Unjust Enrichment**

26  **Against ClassicStar and GeoStar**

27      36.  Plaintiffs re-allege and incorporate Paragraphs 1 through 35 above as though

28  fully set forth herein.

-6-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    37.  By virtue of the monies invested by Plaintiffs with Defendant ClassicStar,

2   Defendant ClassicStar has been unjustly enriched by the sum of at least $6,793,468.49 as of

3   July 9, 2008, together with interest as allowed by the Purchase Agreement and by law, or

4   such other and greater amounts as may be proven at trial.

5    38.  It would be unfair to allow Defendant ClassicStar to retain the benefits of the

6   monies which Plaintiffs have invested with it.  To avoid any unjust enrichment to Defendant

7   ClassicStar, Defendant ClassicStar should be required to pay Plaintiffs the sum of at least

8   $6,793,468.49 as of July 9, 2008, together with interest as allowed by the Purchase

9   Agreement and by law, or such other and greater amounts as may be proven at trial.

10    39.  Because Defendant GeoStar is the alter ego of Defendant ClassicStar, both are

11   jointly and severally liable for the above-stated unjust enrichment.

**THIRD CAUSE OF ACTION**
**Breach of Contract: Escrow Agreement**
**Against GeoStar Financial and GeoStar**

14    40.  Plaintiffs re-allege and incorporate Paragraphs 1 through 39 above as though

15   fully set forth herein.

16    41.  The Escrow Agreement between Plaintiffs and Defendant GeoStar Financial

17   provides that Defendant GeoStar Financial was to establish an escrow account into which it

18   would deposit collateral, in the form of 1,600,000 shares of common stock of GaStar

19   Exploration Ltd. ("GaStar"), to be used as collateral for the payment obligations due under

20   the Purchase Agreement.

21    42.  At no time did Defendant GeoStar Financial contact the escrow agent designated

22   in the Escrow Agreement, undertake to ensure that an escrow account was established, nor

23   deposit such collateral into any escrow account.

24    43.  On a quarterly basis, the number of shares of stock to be held in the escrow

25   account was to be calculated in accordance with a formula set forth in the Escrow

26   Agreement, and Defendant GeoStar Financial was to provide in a timely fashion to the

27   escrow account any necessary additional shares.

28    44.  At no time did Defendant GeoStar Financial provide any additional shares as

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1  required.

2      45.  At all relevant times herein, Plaintiffs have performed all of the covenants and

3  promises required on their part to be performed in accordance with the terms and conditions

4  of the Escrow Agreement.

5      46.  As a direct and proximate result of the breach of the Escrow Agreement by

6  Defendant GeoStar Financial, in conjunction with the breach and anticipatory breach of the

7  Purchase Agreement by Defendant ClassicStar, Plaintiffs have sustained damages in the

8  amount of $6,793,468.49 as of July 9, 2008, together with interest as allowed by the

9  Purchase Agreement and by law.

10      47.  Because Defendant GeoStar is the alter ego of Defendant GeoStar Financial, both

11  are jointly and severally liable for the above-stated damages.

12  **FOURTH CAUSE OF ACTION**<br/>Deceit/Fraud (Cal. Civ. Code §§1709-10)<br/>**Against Ferguson**

13

14      48.  Plaintiffs re-allege and incorporate Paragraphs 1 through 47 above as though

15  fully set forth herein.

16      49.  Defendant Ferguson was, upon information and belief, a principal in the

17  defendant corporations and had a substantial personal interest in defrauding Plaintiffs.

18      50.  Defendant Ferguson was the principal negotiator on behalf of Defendant

19  ClassicStar with respect to the Purchase Agreement.

20      51.  Over the approximate eleven months of negotiations preceding execution of the

21  Purchase Agreement, Defendant Ferguson repeatedly assured Plaintiffs and their agents,

22  including Joel Baker and his associates, with the intention or with reason to expect that such

23  assurances would be repeated to and relied on by Plaintiffs, that Defendant ClassicStar had

24  sufficient assets to make full and timely payments as required by the Purchase Agreement.

25  According to Mr. Baker, for example, Defendant Ferguson represented that it would be "no

26  problem to comply" with the Purchase Agreement—that Ferguson was "sure of it."

27      52.  During the course of these negotiations, Defendant Ferguson omitted to tell

28  Plaintiffs that Defendant ClassicStar had inadequate assets to make the payments due under

HOWARD<br/>RICE<br/>NEMEROVSKI<br/>CANADY<br/>FALK<br/>& RABKIN<br/>A Professional Corporation

-8-

1  the Purchase Agreement.

2      53.  Defendant Ferguson also omitted to inform Plaintiffs that Defendant ClassicStar

3  was a device and sham set up to avoid liability and to defraud Plaintiffs, and that Defendants

4  Ferguson and ClassicStar had no intention to make the payments as required under the

5  Purchase Agreement.

6      54.  Plaintiffs are informed and believe, and on that basis allege, that, in fact,

7  Defendant Ferguson and other conspirators had previously incorporated Defendant

8  ClassicStar with the intent that it serve as a shell corporation that would not be adequately

9  capitalized, and knew at the time of the negotiations that Defendant ClassicStar would not

10  have sufficient assets to timely make all payments due under the Purchase Agreement or,

11  even if it did have sufficient assets, did not intend to make all payments.

12      55.  Despite his knowledge at the time of negotiations that Defendant ClassicStar

13  would be either unable or unwilling to timely make all payments due under the Purchase

14  Agreement, Defendant Ferguson made representations and material omissions to the

15  contrary with knowledge or expectation that Plaintiffs would act in reliance on such

16  representations and omissions, and therefore with the intent to induce Plaintiffs through such

17  representations and omissions to enter into the Purchase Agreement.

18      56.  Plaintiffs, at the time of the negotiations and upon entering the Purchase

19  Agreement, were ignorant of the falsity of these representations and of the material

20  omissions and believed Ferguson's representations to be true and therefore relied upon them.

21      57.  It was these assurances by Defendant Ferguson, in combination with the material

22  omissions, that induced Plaintiffs to enter into the Purchase Agreement, and Plaintiffs would

23  not have entered the Purchase Agreement had they known the actual facts.

24      58.  Because Defendant Ferguson was not only the principal negotiator for Defendant

25  ClassicStar, but also a director, officer and/or principal shareholder of Defendant

26  ClassicStar, it was reasonable and justified for Plaintiffs to rely upon his representations and

27  omissions.

28      59.  Defendant Ferguson was, upon information and belief, also a principal of

-9-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1  GeoStar Financial and had a substantial personal interest in defrauding Plaintiffs.

2      60.  Defendant Ferguson was the principal negotiator on behalf of Defendant GeoStar

3  Financial with respect to the Escrow Agreement.

4      61.  In the course of negotiations, Defendant Ferguson repeatedly assured Plaintiffs

5  and their agents, namely Mr. Baker and his associates, with the intention or with reason to

6  expect that such assurances would be repeated to and relied on by Plaintiffs, that Defendant

7  GeoStar Financial held or had access to sufficient GaStar stock to deposit as collateral in the

8  escrow account, as provided for in the Escrow Agreement, and that Defendant GeoStar

9  Financial fully intended to deposit such stock as collateral in the escrow account.

10      62.  Defendant Ferguson also represented that attorney William Jansen was "best

11  suited" to serve as the escrow agent because he had been involved in other transactions for

12  the Defendant GeoStar related entities concerning the transfer of GaStar stock.

13      63.  Defendant Ferguson further implicitly represented, by insisting on and then

14  designating Mr. Jansen as the escrow agent in the Escrow Agreement, that Mr. Jansen had

15  the authority and capacity to serve as the escrow agent and had agreed to do so.

16      64.  Defendant Ferguson omitted to tell Plaintiffs that Defendant GeoStar Financial

17  did not have access to sufficient GaStar stock to comply with the Escrow Agreement, nor

18  that Defendant GeoStar Financial did not intend to comply with the Escrow Agreement.

19      65.  Defendant Ferguson also omitted to tell Plaintiffs that he had not obtained

20  Mr. Jansen's consent to serve as the escrow agent, that Mr. Jansen was not authorized to

21  serve as an escrow agent, nor that Defendant Ferguson had never even spoken to Mr. Jansen

22  about the Escrow Agreement.

23      66.  Defendant GeoStar Financial did not undertake to establish an escrow account

24  nor did it deposit any GaStar stock into an escrow account.

25      67.  Nor did Mr. Jansen agree to serve as the escrow agent nor even authorize use of

26  his name in that capacity nor would he have agreed to serve as the escrow agent had he been

27  asked.

28      68.  Despite his knowledge at the time of negotiations that Defendant GeoStar

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

-10-

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES

1  Financial either did not hold or have access to sufficient GaStar stock or, if it did, did not

2  intend to deposit such stock into the escrow account, and that Mr. Jansen had not agreed to

3  serve as the escrow agent nor had even been approached to do so, Defendant Ferguson made

4  representations and material omissions to the contrary with knowledge or expectation that

5  Plaintiffs would act in reliance on such representations and omissions, and therefore with the

6  intent to induce Plaintiffs through such representations and omissions to enter into the

7  Escrow Agreement.

8      69.   Because the Escrow Agreement and the security that it was meant to have

9  provided were critical to Plaintiffs' decision to enter into the Purchase Agreement,

10  Defendant Ferguson's representations and material omissions regarding the Escrow

11  Agreement also were made with the intent to induce Plaintiffs to enter into the Purchase

12  Agreement.

13      70.   Plaintiffs, at the time of the negotiations and upon entering the Escrow

14  Agreement, were ignorant of the falsity of these representations and of the material

15  omissions and believed Ferguson's representations to be true and therefore relied upon them.

16      71.   It was these assurances by Defendant Ferguson, in combination with the

17  omissions, that induced Plaintiffs to enter into the Escrow Agreement and, by extension, the

18  Purchase Agreement.  Plaintiffs would not have entered the Escrow Agreement and, by

19  extension, the Purchase Agreement had they known the actual facts.

20      72.   Because Defendant Ferguson was not only the principal negotiator for Defendant

21  GeoStar Financial, but also a director, officer and/or principal shareholder of Defendant

22  GeoStar Financial, it was reasonable and justified for Plaintiffs to rely upon his

23  representations and omissions.

24      73.   As a proximate result of the aforementioned fraudulent conduct by Defendant

25  Ferguson, with respect to both the Purchase Agreement and Escrow Agreement, Plaintiffs

26  were induced to enter into agreements that Defendants ClassicStar, GeoStar Financial, and

27  GeoStar had no intent to honor, by reason of which Plaintiffs have sustained damages in the

28  amount of $6,793,468.49 as of July 9, 2008, together with interest as allowed by the

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

-11-

1   Purchase Agreement and by law.

2   74.   The aforementioned conduct of Defendant Ferguson was an intentional

3   misrepresentation, deceit, or concealment of a material fact known to him with the intention

4   on his part of thereby depriving Plaintiffs of property or legal rights or otherwise causing

5   injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in

6   conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive

7   damages.

8   **FIFTH CAUSE OF ACTION**
**Negligent Misrepresentation (Cal. Civ. Code §§1709-10)**
9   **Against Ferguson**

10   75.   Plaintiffs re-allege and incorporate Paragraphs 1 through 74 above as though

11   fully set forth herein.

12   76.   When Defendant Ferguson made the representations and material omissions set

13   forth above in Paragraphs 51-53 and 61-65, he had no reasonable grounds for believing them

14   to be true.

15   77.   Defendant Ferguson made such representations and material omissions with

16   knowledge or expectation that Plaintiffs would act in reliance on such representations and

17   omissions, and therefore with the intent to induce Plaintiffs through such representations and

18   omissions to enter into the Purchase Agreement and Escrow Agreement.

19   78.   Plaintiffs, at the time of the negotiations and upon entering the Purchase

20   Agreement and Escrow Agreement, were ignorant of the falsity of these representations and

21   of the material omissions and believed Ferguson's representations to be true and therefore

22   relied upon them.

23   79.   It was these assurances by Defendant Ferguson, in combination with the

24   omissions, that induced Plaintiffs to enter into the Purchase Agreement and Escrow

25   Agreement, and Plaintiffs would not have entered the Purchase Agreement or Escrow

26   Agreement had they known the actual facts.

27   80.   Because Defendant Ferguson was the principal negotiator for Defendants

28   ClassicStar and GeoStar Financial, and also a director, officer and/or principal shareholder

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

-12-

1   of Defendants ClassicStar and GeoStar Financial, it was reasonable and justified for

2   Plaintiffs to rely upon his representations and omissions.

3       81. As a proximate result of the aforementioned negligent misrepresentation by

4   Defendant Ferguson, with respect to both the Purchase Agreement and Escrow Agreement,

5   Plaintiffs were induced to enter into agreements that Defendants ClassicStar, GeoStar

6   Financial, and GeoStar had no intent to honor, by reason of which Plaintiffs have sustained

7   damages in the amount of $6,793,468.49 as of July 9, 2008, together with interest as allowed

8   by the Purchase Agreement and by law.

9       WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, as

10  follows:

11      1. For damages in the amount of $6,793,468.49 as of July 9, 2008 plus further

12  interest as allowed by the Purchase Agreement, or such other and greater amounts as may be

13  proven at trial;

14      2. For punitive damages in an amount appropriate to punish Defendant Ferguson

15  and deter others from engaging in similar conduct;

16      3. For an award of prejudgment and post judgment interest at the rate for the

17  greatest time and at the highest rate allowable by law;

18      4. For attorneys' fees and expenses;

19      5. For such other and further relief as the Court deems just, proper and equitable.

20

21  DATED: July 9, 2008.

                                     GILBERT R. SEROTA

22                                        JEREMY T. KAMRAS
                                      HOWARD RICE NEMEROVSKI CANADY

23                                            FALK & RABKIN
                                      A Professional Corporation

24                                        By: _____

25                                             JEREMY T. KAMRAS

26                                        Attorneys for Plaintiffs PETER FORTENBAUGH
                                      and BETTY LEE, in their capacity as Trustees of

27                                        THE PETER FORTENBAUGH TRUST

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

-13-

## VERIFICATION

We, Peter Fortenbaugh and Betty Pi-Ju Lee, in our capacity as Trustees of The Peter Fortenbaugh Trust, are the Plaintiffs in this action. We have read the foregoing complaint and know the contents thereof. The same is true to our knowledge, except as to those matters that are therein stated on information and belief, and as to those matters, we believe them to be true.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 1th day of July, 2008.

By: _____
    PETER FORTENBAUGH

By: _____
    BETTY PI-JU LEE

-14-

Exhibit A

# ClassicStar Financial Services Corporation

2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Ph.: (989) 773-7050
Fax: (989) 773-0006

## EQUINE AND WORKING INTEREST PURCHASE AGREEMENT

This Equine and Working Interest Purchase Agreement (hereinafter referred to as "Agreement") is made and entered into as of this 30. day of September, 2005, by and between ClassicStar Financial Services, Inc. of 2480 W. Campus Drive, Bldg. .C, Mt. Pleasant, MI 48858 (hereinafter referred to as "Buyer") and The Peter Fortenbaugh Trust, of 1105 Hamilton Avenue, Palo Alto, California. 94301 (hereinafter referred to as "Investor" or the "Seller").

WHEREAS, Seller originally invested (hereinafter referred to as "Investment") and entered into certain agreements in 2001 with ClassicStar LLC (hereinafter referred to as "ClassicStar") for the express purpose of leasing and breeding Mares (hereinafter referred to as "mare lease" or "mare lease interest");

WHEREAS, pursuant to Seller's Investment, *supra*, Seller acquired certain equine breeding and ownership rights pursuant to its execution and performance of certain agreements with Buyer, including but not limited to a Mare Lease & Breeding Agreement, Boarding Agreement, Foal Agreement, Nominee Agreement, and Horse Board & Services Agreement (hereinafter collectively referred to as "Contract Documents" or "the Contract Documents"); and.

WHEREAS, Seller, further pursuant to the Investment, in July 2002 converted a certain portion of their Investment, being Seven Hundred Sixty-Six Thousand One Hundred Eight Dollars ($766,108) into the 2002 Powder River Basin Drilling Program (hereinafter referred to as "Working Interest", and collectively with "mare lease" as "Investments");

WHEREAS, the parties to this Agreement now wish to evidence the sale, transfer, assignment, delegation and assumption of all of those certain equine breeding and ownership rights, interests and duties, including, but not limited to, any living equine personal property and assets, whether registered or unregistered with any association, whether domestic or foreign (as referenced on the attached Exhibit "A"), as well as any and all working interests in the 2002 Powder River Basin Drilling Program, (hereinafter collectively referred to as "the Assets" or "Assets"), in accordance with the terms and conditions of this Agreement; and

WHEREAS, the parties wish this agreement to act as, and provide evidence of, either by way of the entire agreement, or as required in a notice containing certain of the terms and conditions herein, a bill of Sale, Assignment and Assumption; and

NOW, THEREFORE, in consideration of the promises, mutual representations, warranties and covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

I.

TERMS

A.     Sale and Assignment. In exchange for the payment of consideration stated herein, *infra*, Seller hereby sells, assigns, conveys, transfers and forever delivers to Buyer any and all right, title and interest of Seller in and to the assets. Seller shall retain no equine breeding and ownership interests, as well as no working interests or right to convert to shares of any other entity from the working interest, whether knowingly conveyed or not conveyed to Buyer in connection with this Agreement and not otherwise previously disposed of, that Seller acquired pursuant to the Contract Documents. Consideration shall consist of, and be paid in accordance with, the following schedule of terms:

1.     CASH:     Principal of Six Million One Hundred Thousand Dollars ($6,100,000.00) plus interest at a rate of 6%. Interest shall begin to accrue on September 1, 2005. Said principal and interest is to be paid in the amounts and on the dates shown on the attached schedule "Exhibit B". As such, any consummation of payments pursuant to the terms and conditions of this agreement shall be specifically subject to the following:

a.     Seller acknowledges that they (a) are competent to understand and does understand the nature of this transaction, and (b) are able to bear the economic risk.

b.     Seller has sufficient resources and the requisite investment knowledge and experience to enter into this transaction and meets one of the qualifications for "Accredited Investor," as such term is defined under Regulation D of the Securities Act of 1933, as amended.

2.     Seller shall further deliver an Assignment duly executed for all of Seller's right, title and interest in and to the Assets, in whatever form provided or requested by Buyer.

3.  The outstanding indebtedness owed to NELC, secured by the mare interests referenced in this agreement, will mature as of January 1, 2006. The sum due at that time will be One Million Three Thousand Three Hundred Seventy Dollars and Sixty-Seven Cents ($1,003,370.67). Buyer shall pay, directly to NELC, for the benefit of Seller, that amount owed on the NELC obligation referenced herein, on or before January 1, 2006.

## II.
## REPRESENTATIONS & WARRANTIES

A.   Seller's Representations & Warranties. Seller hereby represents and warrants the following in connection with the execution, delivery and performance of this Agreement:

1.  This offer for sale of the Assets was not solicited in any manner by the Buyer. Further this offer did not involve: (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium, or broadcast via television or radio, or (b) any other form of general solicitation or advertising.

2.  Seller recognizes that the Assets were not registered under the Securities Act of 1933 or other applicable state securities laws. Seller further acknowledges that Buyer was under no obligation to register the Assets or to assist Seller in complying with any exemption from registration.

3.  With the exception of certain indebtedness of NELC, Seller holds of record and/or owns beneficially the Assets free and clear of any restrictions on transfer, taxes, security interests, purchase rights, contracts, commitments, restrictions, liens, security interests, pledges, encumbrances, equities, claims, or demands; therefore, Seller has and will convey to Buyer hereunder good and marketable title to all of the Assets, free and clear of all defects, liens, taxes, charges, lease or conditional sale obligations, licenses, and other encumbrances, defects or rights in third parties. The Seller has full power and authority to execute and deliver this Agreement and to perform his obligations under it.

4.  The Seller has received and carefully reviewed this Agreement, and has relied solely on the terms of the agreement as contained or referenced herein.

5.  Seller recognizes that this Purchase Agreement has not been reviewed, approved or disapproved by any governmental or regulatory agency, nor has any such agency passed upon the adequacy or accuracy thereof.

6.  Neither the company, nor their respective directors, officers or other representatives, has made any statement, representation or warranty that in any

manner influenced or was taken into account or relied upon by Seller in deciding whether to enter into this Agreement. Seller has not, in any manner in deciding to enter into this Agreement, relied on statements by directors, officers or other representatives with respect to the Assets or the Buyer's business or prospects. Seller has decided to enter into this Agreement based on their own independent investigation and for their own purposes, which are entirely independent of any analysis of the short- or long-term value or prospects of the Assets.

7.  The Seller acknowledges that the Buyer has not made any representations regarding the potential tax impact of this transaction.

8.  Seller has the full capacity, power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and, this Agreement is binding upon Seller and is enforceable against Seller in accordance with its terms.

9.  The execution and delivery of this Agreement by Seller and the sale of the Assets pursuant hereto will not conflict with, or result in a breach of or a default under, or give rise to a right of acceleration under, any agreement or instrument to which Seller is a party or by which Seller is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which Seller is subject or by which Seller is bound, save and except for that certain indebtedness which may be owed to NELC.

10. No equine or other selling or purchasing agent, broker, finder or other person acting in a similar capacity has participated on behalf of Seller in connection with the transactions contemplated by this Agreement. Seller will reimburse and indemnify the Buyer for any fees or expenses of any agent, broker, finder or other person acting in a similar manner hired or engaged by Seller.

11. Seller makes no representations or warranties to Buyer concerning the fitness of purpose of the mare interests.

12. Seller, for itself and its successors and assigns, hereby covenants and agrees that, from time to time, it shall execute and deliver, or shall cause to be executed and delivered, such documents and instruments and shall take, or cause to be taken, such further or other actions as Buyer may reasonably deem necessary or appropriate to sell, assign, convey, transfer and deliver the interests to Buyer or to evidence any of the foregoing. This assurance includes, but is not limited, to the execution and filing of a change of ownership certificate of registration with any association or registry, if or as necessary. Seller shall also provide Buyer with a copy of any vet records and any other records in Buyer's possession which the Buyer may, from time to time, request.

B.     Buyer's Representations & Warranties. Buyer hereby represents and warrants the following in connection with its execution, delivery and performance of this Agreement:

1.     The Buyer has the full power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and this Agreement is binding upon the Buyer and is enforceable against the Buyer in accordance with its terms.

2.     The execution and delivery of this Agreement by the Buyer and the purchase of the Assets pursuant hereto will not conflict with, or result in a breach or a default under, or give rise to a right of acceleration under, any agreement or instrument to which the Buyer is a party or by which the Buyer is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which the Buyer is subject or by which the Buyer is bound.

3.     The Buyer shall be liable for any expenses or other costs for which it is liable because of the terms of this agreement.

4.     The Buyer covenants and promises to make all payments to Seller in accordance with the terms and conditions as stated in this agreement.

5.     Buyer hereby assumes and agrees to take ownership and possession of the assets and to pay, perform and discharge all obligations and liabilities associated herewith beginning and effective the date of this Agreement. Buyer shall not be responsible for, or obligated to pay, any debts or obligations associated with the assets which arose or were accrued before the date of this Agreement.

6.     Any and all obligations of Buyer per this agreement shall be secured by collateral, with said collateral secured under terms and conditions of that certain Escrow Agreement, which is separate and apart from this agreement. Any default, which terms of default shall be governed by the provision III(9), *infra*, shall be satisfied only out of proceeds of the collateral per the terms and conditions of the Escrow Agreement.

7.     Buyer acknowledges that if, and only if, there is a sale or change of control of the company called Gastar Exploration Ltd. ("event"), and if the event enables Buyer to liquidate all of its Gastar shares pursuant to cash being the exclusive, material part of the event, then Buyer shall accelerate payments to Seller required herein, inclusive of interest, with said acceleration to be one lump-sum payment, totaling the remaining amount owed under this agreement, as of the date of the event which accelerates payment. Said accelerated payment shall be made no later than ninety (90) days of the date of the event.

III.
## GENERAL TERMS

The Seller and the Buyer agree as follows:

1.     <u>Full Conveyance</u>. The transfer of the Assets to the Buyer shall constitute the full and final conveyance of all of Seller's right, title and interest in and to the Assets transferred.

2.     <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Seller and the Buyer regarding the offer and sale of the Assets, which Seller is selling, and may be amended only by a writing executed by all parties. This Agreement may not be terminated, cancelled or revoked by the Seller once delivered to the Buyer and shall survive the death or disability of the undersigned, and shall be binding on the heirs and assigns of the parties hereto.

3.     <u>Counterparts, Facsimile</u>. This Agreement may be executed in any number of counterparts, each of which shall be treated as an original but all of which, collectively, shall constitute a single instrument. This Agreement may also be executed by signatures to facsimile transmittal documents in lieu of original or machine generated or copied documents.

4.     <u>Severability</u>. If any provision of this Agreement is illegal, invalid or unenforceable under applicable law, then that provision shall be null and void to the extent necessary to overcome the illegality, invalidity or unenforceability, and the remaining provisions of this Agreement shall not be affected, unless the severance or deletion of the provision alters the intention of the parties and the commercial efficacy of this Agreement.

5.     <u>Installments</u>. Once Seller has received all Asset assignments in formats approved and provided by the Buyer, Buyer may delay, cancel or recover payment if all relevant asset assignments are not timely delivered and properly endorsed for transfer.

6.     <u>Governing Law</u>. This Agreement shall be enforced, governed by and construed in all respects in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles. Venue and jurisdiction shall lie exclusively within the State of Michigan for any and all claims or actions related to, arising from or in connection with this offer and Agreement. Any legal proceedings shall be vested and brought solely by either Seller or Buyer, and not as part of, or in cooperation with any other person not a party to this agreement, in any other proceeding.

7.     <u>Confidentiality.</u> The terms and conditions of this Agreement and all matters between the Seller and the Buyer shall remain confidential and shall not be disclosed to any party without prior written permission from the Buyer, except where required by a written court order or applicable law.

8.     <u>Binding Effect.</u> This Agreement shall be binding upon the heirs, successors and assigns of the parties hereto. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned by either of the parties to this Agreement without the prior written consent of the Buyer.

9.     <u>Default.</u> Should there be any default by Buyer pursuant to this Agreement regarding payment of any amount, Buyer shall have thirty (30) days to cure the default. If default of payment is not cured within 30 days, then Seller shall have right of recourse against collateral, governed by that certain Escrow Agreement, referenced in II(B)6, *supra.* Any other default by either Buyer or Seller not involving payment of monies shall be cured within a thirty (30) day period by best efforts of the defaulting party. If the default is not cured, then the non-defaulting party shall have right to seek redress against defaulting party in a court of competent jurisdiction pursuant to section III(6), *supra.*

10.    <u>Force Majeure.</u> Neither party shall be considered in default hereunder or be liable for any failure to perform or delay in performing any provisions of this Agreement in the customary manner, to the extent that such failure or delay shall be caused by any reason beyond its control, including an act of God; fire, explosions, hostilities or war (declared or undeclared); striking or work stoppage involving either party's employees or governmental restrictions; financial purposes; or any governmental act; provided that the party declaring force majeure shall give notice to the other party promptly and in writing of the commencement of the condition, the nature, and the termination of the force majeure condition. The party whose performance has been interrupted by such circumstances shall use every reasonable means to resume full performance of this Agreement as promptly as possible.

SELLER SPECIFICALLY RELEASES THE BUYER FROM ANY AND ALL MANNER OF ACTION, CAUSES OF ACTION, CLAIMS, CHARGES, SUITS, DAMAGES, DEMANDS AND OBLIGATIONS OR LIABILITIES OF WHATSOEVER NATURE, WHETHER IN LAW OR IN EQUITY, FOR ANY CLAIMS FOR LOST PROFITS OR LOST OPPORTUNITY RELATED TO SELLER'S OFFER AND SALE OF THE ASSETS TO THE BUYER.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the _30_ day of September, 2005.

Seller:
THE PETER FORTENBAUGH TRUST

Witness:                                          Peter Fortenbaugh, Trustee

_Kathryn Coun_                                    _P. F._

Social Security or other Taxpayer I.D. No.: ‾188·48·2394‾

Witness:                                          Betty Lee, Trustee

_Kathryn Coun_                                    _B. Lee_

Social Security or other Taxpayer I.D. No.: ‾572 81 7089‾

ACCEPTED AND AGREED:
ClassicStar Financial Services, Inc., a Delaware corporation ("the Company")

By: _____
Its: _____

Dated:  September _____, 2005

Please mail or otherwise deliver two (2) executed copies of this Agreement to:

CLASSICSTAR FINANCIAL SERVICES, INC.
2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Phone: (989) 773-7050
Fax:  (989) 773-0006

**EXHIBIT A**
**EQUINE INTERESTS**
**ALLOCATION OF PURCHASE PRICE**

| DESCRIPTION OF EQUINE INTERESTS | AGREED ALLOCATION OF PURCHASE PRICE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| TOTAL PURCHASE PRICE | $6,100,000.00 |

EXHIBIT B
PAYMENT SCHEDULE

Beginning September 15, 2005

| DATE | PAYMENT |
|------|---------|
| 9/15/05 | $314,038.36 |
| 4/1/06 | $1,191,907.75 |
| 7/1/06 | $472,360.60 |
| 10/1/06 | $466,330.55 |
| 1/1/07 | $460,300.50 |
| 4/1/07 | $454,270.45 |
| 7/1/07 | $448,240.40 |
| 10/1/07 | $442,210.35 |
| 1/1/08 | $436,180.30 |
| 7/1/08 | $1,060,755.02 |
| 1/1/09 | $1,030,377.51 |

Exhibit B

## ESCROW AGREEMENT

This Escrow Agreement ("Agreement"), dated this 30 day of Sept, 2005, between GeoStar Financial Services Corporation ("GeoStar"), of 2480 W. Campus Dr., Bldg. C, Mt. Pleasant MI 48858 and Peter Fortenbaugh and Betty Pi Ju Lee (sometimes collectively "Investor"), and William Jansen of Warner, Norcross and Judd, 2000 Town Center, Ste. 2700, Southfield MI 48075-1318 ("Escrow Agent").

### RECITALS

WHEREAS, the intent of the parties to this Agreement is to provide security to Fortenbaugh to assure payment to them of the balances due from time to time pursuant to that certain agreement between the parties to repurchase any and all mine lease interests owned by Fortenbaugh at this time.

THEREFORE, in consideration of the agreements set forth in the purchase agreement and the mutual covenants set forth in this Agreement, the parties agree as follows:

1.  Contemporaneously (or as soon as practicably possible) with the execution of the Purchase Agreement by all parties, GeoStar shall deliver to Escrow Agent, to hold in accordance with the terms of this Agreement, 1,600,000 shares of common stock of Gastar Exploration, Ltd., which number is subject to fluctuation based on calculations as discussed in 3 (b) and 3 (c), *infra*.

2.  Escrow Agent agrees to hold, administer and deliver the Stock pursuant to the terms of this Agreement.

3.  The amount of shares to be held by Escrow Agent shall be calculated, on a quarterly basis, as follows:

    (a)  As of the date of this agreement, GeoStar shall place with escrow the number of _____ shares of Gastar Exploration Ltd., valued at $_____ per share. Said number of shares to be deposited and retained in escrow by Escrow Agent shall be subject to fluctuation, as enumerated in (b), *supra*.

    (b)  On a quarterly, calendar basis, being October 1, 2005; January 1, 2006; April 1, 2006; July 1, 2006; October 1, 2006; and so forth until completion of payments as contemplated in the schedule contained in the Purchase Agreement between the parties; the number of shares required to be held in escrow shall fluctuate according to the following equation:

    *amount of purchase price left to be paid*
    *on quarterly calendar date*
    ————————————————————————————————  =  *number of shares to be held in escrow*
    *closing market price of Gastar on date*
    *of quarterly calendar date*

    (c)  As the number of shares to be held in escrow shall fluctuate based upon the calculations in (b), *supra*, GeoStar shall endeavor and shall provide in a timely fashion the number of shares necessary to be held in escrow on the following parameters:

i.    If the number of shares being held in escrow, as calculated on a quarterly basis in (b), supra, exceed the amount needed to cover the outstanding purchase obligation owed as of that date, then the number of shares shall be reduced by escrow agent, with the escrow agent remitting to GeoStar that number of shares constituting over allotment.

ii.    If the number of shares being held in escrow, as calculated on a quarterly basis in (b), supra, do not equal, as calculated, the amount remaining and owed to Fortenbaugh by GeoStar, then GeoStar shall provide such additional shares, based on the closing market price of the quarterly calculation, as is necessary so that the number of shares held by Escrow Agent shall approximate the number of shares necessary, when, multiplied times the closing price on the date of quarterly calculation, to equal the amount owed and outstanding to Fortenbaugh by GeoStar under the Purchase Agreement.

4.    Subject to the provisions contained in paragraph 3 of this Agreement, the Escrow Agent shall disburse to Fortenbaugh that portion of the Stock to which he is entitled only upon the occurrence of both of the following conditions:

(a)    Receipt by Escrow Agent of written notice from Fortenbaugh to the Escrow Agent (with a copy of that notice to be directed to GeoStar) that there exists certain condition(s) of default in accordance with the provisions of that certain Agreement between Fortenbaugh and other parties; and

(b)    A failure by Escrow Agent to receive a written notice from GeoStar disputing the existence of the conditions or facts certified by the Fortenbaugh notice in 4(a), with said notice from GeoStar to be received no later than twenty (20) days after receipt of the Fortenbaugh written notice, as described in 4(a), herein.

In the event the Escrow Agent does receive a notice from GeoStar, as referenced in Paragraph 3 (b) herein, in which notice GeoStar disputes the existence of the conditions or facts previously certified by that Fortenbaugh, then the Escrow Agent shall tender those shares of stock for that Fortenbaugh into the custody of the United States District Court for the Eastern District of Michigan, together with such legal pleadings as it deems appropriate, and will then be discharged from all liability under this Agreement with respect to that Fortenbaugh. Fortenbaugh and GeoStar agree to the jurisdiction, venue and state and federal law of the Court indicated above in all matters relating to the Stock or this Agreement.

5.    The portion of the Stock that Fortenbaugh is entitled to have delivered to him by the Escrow Agent (or money in lieu of such stock, as the case may be), under the terms of this Agreement due to GeoStar=s default of the terms of the Agreement, is that quantity of Stock (or money in lieu thereof) which is equal to the amount then due and owing to that Fortenbaugh upon the default of the Agreement by GeoStar. The Escrow Agent shall have the option, exercisable in its sole discretion, of (i) selling a quantity of shares of Gastar Exploration Ltd. stock from that portion of the stock to which that Fortenbaugh is entitled sufficient to generate adequate funds to pay to that Fortenbaugh the amount then due and owing to him or her under the Agreement or (ii) transferring to that Fortenbaugh those number of shares of Gastar Stock from that portion of the stock to which that

2

Fortenbaugh is entitled, the cumulative value of which is equal to the amount then due and owing to that Fortenbaugh under the Agreement. In determining the value of the shares of Gastar Stock for purposes of this paragraph, Escrow Agent shall use the calculation method contained herein in 3(c), supra. Notwithstanding anything to the contrary contained herein, if Fortenbaugh becomes entitled to enforce the provisions of this Agreement due to the default of GeoStar under the Agreement, the fair market value of the Stock shall be the reported closing share price of the Stock on the exchange it is then being publicly traded.

Upon delivery of the amount of shares of Stock to which Fortenbaugh is determined by the Escrow Agent to be entitled, the escrow shall terminate with respect to Fortenbaugh, and the Escrow Agent shall deliver to GeoStar that portion of the remaining Stock of Gastar Exploration, Ltd. then being held in escrow and comprising of that portion of the stock to which Fortenbaugh is not entitled.

6.     Escrow Agent acknowledges the receipt of the Stock, and Escrow Agent agrees to hold and deliver the Stock in accordance with the terms and conditions of this Agreement. Escrow Agent shall be entitled to receive a fee of Five Thousand and no/100 dollars ($5,000.00) per year for its services under this Agreement, payable exclusively and independently of its escrow holdings, by GeoStar and not by any Fortenbaugh or from his or her collateral. Escrow Agent shall be liable only to hold the Stock and to deliver the same to a party named in this Agreement in accordance with the provisions of this Agreement; it being expressly understood that by acceptance of this Agreement Escrow Agent is acting in the capacity of a depository only, and shall not be liable or responsible to anyone for any damages, losses or expenses unless the same shall be caused by the gross negligence or willful malfeasance of Escrow Agent. In the event of any disagreement between Fortenbaugh and GeoStar, resulting in adverse claims and demands being made in connection with or for any property involved in or affected by this Agreement, Escrow Agent shall be entitled to refuse to comply with any such claims or demands as long as such disagreement may continue, and in so refusing, shall make no delivery or other disposition of any property then held by it under this Agreement. In so doing, Escrow Agent shall not become liable in any way for such refusal, and Escrow Agent shall be entitled to continue to refrain from acting until:

(a)     The right of adverse claimants shall have been finally settled by binding arbitration or finally adjudicated in a court assuming and having jurisdiction of the property involved in this Agreement or affected by this Agreement; or

(b)     All differences shall have been resolved by an agreement reached between Fortenbaugh and GeoStar, and Escrow Agent shall have been notified in writing of such an agreement signed by the other parties to this Agreement. Furthermore, the Escrow Agent shall have the right, at any time after a dispute between any Fortenbaugh and GeoStar has arisen, to deliver the Stock into the Court for delivery to the appropriate party, at which point Escrow Agent's obligation under this Agreement shall terminate with respect to GeoStar and that Fortenbaugh.

7.     GeoStar agrees to indemnify and hold Escrow Agent harmless against any and all losses, claims, damages, liabilities, and expenses, including, without limitation, legal counsel fees

5.

which may be imposed on Escrow Agent or incurred by Escrow Agent in connection with the performance of its duties under this Agreement, including, without limitation any litigation arising from this Agreement or otherwise involving the subject matter of this Agreement.

8.    Wherever any notice is required or permitted under this Agreement, the notice shall be in writing and shall be deemed effective and given and received on personal delivery or upon receipt by the United States Mail, registered or certified mail, return receipt requested, postage prepaid, to the addresses set out below, or at other addresses as are specified by written notice delivered in accordance with this Agreement:

(a)    Fortenbaugh

Peter Fortenbaugh
xxxxxxxxx  1106 Hamilton Avenue
xxxxxxxxx  Palo Alto, CA  94301

(b)    GeoStar

GeoStar Financial Services Corporation
Attn: Fred Lambert and Milton Evans
2480 W. Campus Dr., Bldg. C
Mt. Pleasant, MI  48858

with a copy to:

(c)    Escrow Agent
William R. Jansen, Esq.
Warner Norcross & Judd LLP
2000 Town Center
Suite 2700
Southfield, Michigan 48075

9.    This Agreement shall bind, and inure to the benefit of, the parties and their respective heirs, executors, administrators, personal representatives, officers, directors, principals, agents, successors and assigns.

10.    This Agreement shall not be changed except by a writing executed by each party.

11.    This Agreement sets forth the entire understanding of the parties. This Agreement supersedes and/or replaces any oral or written agreement(s) relating to the subject matter entered into by the parties before the date of this Agreement, such agreements being fully and finally merged into this Agreement.

12.    This Agreement may be signed by the parties hereto in counterparts.

4

GeoStar Corporat i on    Fax:18897FX0906    Document 7    Filed Sep1/2   006   12:00    Page 7 of 88

In witness whereof, the parties to this Agreement have executed this agreement under seal on the date and year first written above.

WITNESSES:

_____

_____

GEOSTAR CORPORATION,

By: _____

Its: _____

_Kathryn Coursh_
Kathryn Coursh

_Kathryn Coursh_
Kathryn Coursh

FORTENBAUGH

_[signature]_
Peter Fortenbaugh

_[signature]_
Betty Pi Ju Lee

WARNER, NORCROSS & JUDD, LLP

By: _____
    William R. Jansen, Esq.
    Its: Partner

_____

_____

863704-1

5

Exhibit C



DAVID W. SCOFIELD
ATTORNEY/STAFF

PETERS SCOFIELD PRICE
A Professional Corporation

dws@psplawyers.com

August 21, 2006

ClassicStar Financial Services, Inc.
2480 West Campus Drive Building C
Mt. Pleasant, Michigan 48858

Re:    *Demand For Payment– Equine and Working Interest Purchase
       Agreement – The Peter Fortenbaugh Trust*

Dear Sirs:

This law firm has been engaged by The Peter Fortenbaugh Trust (the "Trust") to resolve the existing default under the referenced Equine and Working Interest Purchase Agreement and to demand payment for all sums due and owing under such instrument. Should ClassicStar Financial Services, Inc. ("ClassicStar") not be in a position to cure its default immediately, I have been authorized to pursue the possibility of negotiating a modification of the existing agreement or, alternatively, to take all such action as may be necessary to collect.

This letter constitutes notice of default of the April 1, 2006 payment in the sum of $1,191,907.75 and the July 1, 2006 payment in the sum of 472,360.60. If such default is not cured within 30 days of today's date, or in other words, on or before Monday, September 18, 2006, the Trust shall exercise any and all remedies at law or in equity that it may have available to it, for such default and *ex contractu*. If ClassicStar desires to engage in an amicable resolution to this dispute, however, please let me know when you would be available to discuss these matters.

Very truly yours,

PETERS SCOFIELD PRICE
*A Professional Corporation*

David W. Scofield

DWS:t

**PROOF OF SERVICE**

I, Joanne Caruso, declare:

I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On July 14, 2008 I served the following document(s) described as **STIPULATION AND [PROPOSED] ORDER TO FILE PROPOSED FIRST AMENDED COMPLAINT:**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐    by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

☐    by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Fred M. Blum
Ruben Ruiz
BASSI, MARTINI, EDLIN &
BLUM
351 California Street, Suite 200
San Francisco, CA 94104
Tel: 415-397-9006
Fax: 415-397-1339

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on July 14, 2008.

_Joanne Caruso_
Joanne Caruso

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

-1-

**PROOF OF SERVICE**

**PROOF OF SERVICE**

I, Joanne Caruso, declare:

I am a resident of the State of California and over the age of eighteen years and not a party to the within-entitled action; my business address is Three Embarcadero Center, Seventh Floor, San Francisco, California 94111-4024. On July 15, 2008 I served the following document(s) described as **NOTICE OF ENTRY OF ORDER TO FILE FIRST AMENDED COMPLAINT**:

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below.

☐ by transmitting via email the document(s) listed above to the email address(es) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☒ by causing to be personally served via Free Wheelin Attorney Service the document(s) listed above to the person(s) at the address(es) set forth below.

Fred M. Blum
Ruben Ruiz
BASSI, MARTINI, EDLIN & BLUM
351 California Street, Suite 200
San Francisco, CA 94104
Tel: 415-397-9006
Fax: 415-397-1339

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on July 15, 2008.

Joanne Caruso

-1-

PROOF OF SERVICE

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

# EXHIBIT B

SUM-100

## SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Classicstar Financial Services, Inc., A Delaware corporation
and Does 1 through 30, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
Peter Fortenbaugh and Betty Lee, in their capacity as
Trustees of The Peter Fortenbaugh Trust, a California Trust

ENDORSED

2007 APR 24  A  9: 05

THE TORRE, CLERK of the SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA
BY_____
DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Santa Clara County Superior Court

CASE NUMBER:
*(Número del Caso):* 07 C V 08450

191 N. First Street                                      San Jose, CA  95113-1090
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Richard A. Ergo/Kenneth B. McKenzie              BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875           Walnut Creek, California 94596
(925) 935-3300

DATE:  APR 2 4 2007           Kiri Torre                    Clerk, by  Shanon Cullen              , Deputy
*(Fecha)*              Executive Officer/Clerk        *(Secretario)*                        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
Martin Dean's Essential Forms ™

SUMMONS

Code of Civil Procedure §§ 412.20, 465

2515-001

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO)* :
Classicstar Financial Services, Inc., A Delaware corporation
and Does 1 through 30, inclusive

**ENDORSED**

2007 APR 24  A 9: 05

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE)* :
Peter Fortenbaugh and Betty Lee, in their capacity as
Trustees of The Peter Fortenbaugh Trust, a California Trust

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DIAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Santa Clara County Superior Court | CASE NUMBER:<br>*(Número del Caso):* 07CV084507 |
|---|---|

191 N. First Street                     San Jose, CA  95113-1090
The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Richard A. Ergo/Kenneth B. McKenzie          BOWLES & VERNA LLP
2121 N. California Boulevard, Suite 875       Walnut Creek, California 94596
(925) 935-3300

| DATE:  APR 2 4 2007    Kiri Torre | Clerk, by  Shanon Cutler | , Deputy |
|---|---|---|
| *(Fecha)*    ~~cutive Officer/Clerk~~ | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

| [SEAL] | |
|---|---|

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)* :

3. [ ] on behalf of *(specify)* :

    under: [ ] CCP 416.10 (corporation)              [ ] CCP 416.60 (minor)
             [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
             [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
             [ ] other *(specify)* :
4. [ ] by personal delivery on *(date)* :

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]
Martin Dean's Essential Forms ™

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

2515-001

1   RICHARD A. ERGO (#110487)
    rergo@bowlesverna.com
2   KENNETH B. MCKENZIE (#142894)
    kmckenzie@bowlesverna.com
3   BOWLES & VERNA LLP
    2121 N. California Boulevard, Suite 875
4   Walnut Creek, California 94596
    Telephone: (925) 935-3300
5   Facsimile: (925) 935-0371

6   Attorneys for Plaintiffs
    Peter Fortenbaugh and Betty Lee,
7   in their capacity as Trustees of the
    Peter Fortenbaugh Trust

8

ENDORSED

2007 APR 24  A 9: 05

*Sharon Cullen*

9                  SUPERIOR COURT OF CALIFORNIA

10                   COUNTY OF SANTA CLARA

11

12  PETER FORTENBAUGH and BETTY LEE, in      Case No.: 107CV084507
    their capacity as Trustees of THE PETER
13  FORTENBAUGH TRUST, a California Trust,
                                             COMPLAINT FOR DAMAGES FOR
14         Plaintiffs,                       BREACH OF CONTRACT AND UNJUST
                                             ENRICHMENT
15  v.

16  CLASSICSTAR FINANCIAL SERVICES, INC.,
    a Delaware corporation, and DOES 1 through 30,
17  inclusive.

18         Defendants.

19

20         COMES NOW, plaintiffs PETER FORTENBAUGH and BETTY LEE, in their capacity

21  as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust, and for a cause of

22  action against defendant CLASSICSTAR FINANCIAL SERVICES, INC. and DOES 1 through

23  30, allege as follows:

24                          GENERAL ALLEGATIONS

25         1.     Plaintiffs PETER FORTENBAUGH and BETTY LEE, in their capacity as

26  Trustees of THE PETER FORTENBAUGH TRUST, a California Trust (collectively

27  "Plaintiffs"), are individuals residing in Santa Clara County, State of California.

28

-1-
                              COMPLAINT FOR DAMAGES

1  RICHARD A. ERGO (#110487)
   rergo@bowlesverna.com
2  KENNETH B. MCKENZIE (#142894)
   kmckenzie@bowlesverna.com
3  BOWLES & VERNA LLP
   2121 N. California Boulevard, Suite 875
4  Walnut Creek, California 94596
   Telephone: (925) 935-3300
5  Facsimile: (925) 935-0371

6  Attorneys for Plaintiffs
   Peter Fortenbaugh and Betty Lee,
7  in their capacity as Trustees of the
   Peter Fortenbaugh Trust

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SANTA CLARA

11

12  PETER FORTENBAUGH and BETTY LEE, in       Case No.: 107CV084507
    their capacity as Trustees of THE PETER
13  FORTENBAUGH TRUST, a California Trust,
                                               COMPLAINT FOR DAMAGES FOR
14        Plaintiffs,                          BREACH OF CONTRACT AND UNJUST
                                               ENRICHMENT
15  v.

16  CLASSICSTAR FINANCIAL SERVICES, INC.,
    a Delaware corporation, and DOES 1 through 30,
17  inclusive.

18        Defendants.

19

20        COMES NOW, plaintiffs PETER FORTENBAUGH and BETTY LEE, in their capacity

21  as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust, and for a cause of

22  action against defendant CLASSICSTAR FINANCIAL SERVICES, INC. and DOES 1 through

23  30, allege as follows:

24                          GENERAL ALLEGATIONS

25        1.    Plaintiffs PETER FORTENBAUGH and BETTY LEE, in their capacity as

26  Trustees of THE PETER FORTENBAUGH TRUST, a California Trust (collectively

27  "Plaintiffs"), are individuals residing in Santa Clara County, State of California.

28

ENDORSED

2007 APR 24 A 9 05

Sharon Cutler

-1-

owles & Verna LLP
1 N. California Blvd.
Suite 875

2.    Defendant CLASSICSTAR FINANCIAL SERVICES, INC. (hereinafter "ClassicStar"), on information and belief, is a Delaware Corporation, with its principal place of business located in the State of Michigan.

3.    On or about September 30, 2005, Plaintiffs and ClassicStar entered into a written Equine and Working Interest Purchase Agreement (the "Agreement") in Santa Clara County, California, which Agreement was to be performed in Santa Clara County, California. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein.

4.    The true names and capacities, whether individual, associate, corporate, or otherwise, of defendants named herein as DOES 1 through 30, inclusive, and each of them, are unknown to plaintiffs, who therefore sue said defendants by said fictitious names, and plaintiffs will ask leave of Court to insert the true names and capacities of said DOE defendants when the same have been ascertained.

5.    At all times herein mentioned, each of the defendants was the agent, employee, principal, alter ego and co-conspirator of each other, and in doing the acts herein alleged, were acting within the course and scope of that agency, employment, representation or relationship, and with the knowledge, consent, and approval of each of the other defendants.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

6.    Plaintiffs re-allege and incorporate Paragraphs 1 through 5 above as though fully set forth herein.

7.    The Agreement between Plaintiffs and ClassicStar provides for ClassicStar to make payments to the Trust in accordance with the Payment Schedule attached as Exhibit "B" to the Agreement.

8.    ClassicStar made the first payment of $314,038.36 owed under the Agreement, which payment was due as of September 15, 2005.

-2-

ɔwles & Verna LLP
1 N. California Blvd.
Suite 875

2.      Defendant CLASSICSTAR FINANCIAL SERVICES, INC. (hereinafter "ClassicStar"), on information and belief, is a Delaware Corporation, with its principal place of business located in the State of Michigan.

3.      On or about September 30, 2005, Plaintiffs and ClassicStar entered into a written Equine and Working Interest Purchase Agreement (the "Agreement") in Santa Clara County, California, which Agreement was to be performed in Santa Clara County, California. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein.

4.      The true names and capacities, whether individual, associate, corporate, or otherwise, of defendants named herein as DOES 1 through 30, inclusive, and each of them, are unknown to plaintiffs, who therefore sue said defendants by said fictitious names, and plaintiffs will ask leave of Court to insert the true names and capacities of said DOE defendants when the same have been ascertained.

5.      At all times herein mentioned, each of the defendants was the agent, employee, principal, alter ego and co-conspirator of each other, and in doing the acts herein alleged, were acting within the course and scope of that agency, employment, representation or relationship, and with the knowledge, consent, and approval of each of the other defendants.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

6.      Plaintiffs re-allege and incorporate Paragraphs 1 through 5 above as though fully set forth herein.

7.      The Agreement between Plaintiffs and ClassicStar provides for ClassicStar to make payments to the Trust in accordance with the Payment Schedule attached as Exhibit "B" to the Agreement.

8.      ClassicStar made the first payment of $314,038.36 owed under the Agreement, which payment was due as of September 15, 2005.

9.      Pursuant to the Payment Schedule, ClassicStar was and is required to make the following additional payments:

```
4/1/06   - $1,191,907.75
7/1/06   - $  472,360.60
10/1/06  - $  466,330.55
1/1/07   - $  460,300.50
4/1/07   - $  454,270.45
7/1/07   - $  448,240.40
10/1/07  - $  442,210.35
1/108    - $  436,180.30
7/1/08   - $1,060,755.02
1/1/09   - $1,030,377.51
```

10.     ClassicStar has breached the Agreement by failing to make the following payments: (a) $1,191,907.75, due on April 1, 2006; (b) $472,360.60, due on July 1, 2006; (c) $466,330.55, due on October 1, 2006; (d) $460,300.50, due on January 1, 2007; and (e) $454,270.45, due on April 1, 2007.

11.     At all relevant times herein, Plaintiffs have performed all of the covenants and promises required on their part to be performed in accordance with the terms and conditions of the Agreement.

12.     Based on the above breach, Plaintiffs have made a written demand on August 21, 2006 (the "Demand Letter") that ClassicStar make the payments which were due on April 1, 2006, and on July 1, 2006. A copy of the referenced Demand Letter is attached hereto as Exhibit "B".

13.     ClassicStar has not responded to the Demand Letter, and has not made the April 1, 2006 payment or the July 1, 2006 payment or any subsequent payment.

14.     ClassicStar's failure to even acknowledge or respond to the Demand Letter, as well as its failure to make the April 1, 2006, July 1, 2006, October 1, 2006, January 1, 2007 and April 1, 2007 payments, evidence that it is fruitless for Plaintiffs to make additional demands for additional payments which are currently owing, or which may become owing under the Agreement.

-3-

owles & Verna LLP
11 N. California Blvd.
Suite 875

COMPLAINT FOR DAMAGES

9.    Pursuant to the Payment Schedule, ClassicStar was and is required to make the following additional payments:

```
4/1/06   - $1,191,907.75
7/1/06   - $   472,360.60
10/1/06  - $   466,330.55
1/1/07   - $   460,300.50
4/1/07   - $   454,270.45
7/1/07   - $   448,240.40
10/1/07  - $   442,210.35
1/108    - $   436,180.30
7/1/08   - $1,060,755.02
1/1/09   - $1,030,377.51
```

10.    ClassicStar has breached the Agreement by failing to make the following payments: (a) $1,191,907.75, due on April 1, 2006; (b) $472,360.60, due on July 1, 2006; (c) $466,330.55, due on October 1, 2006; (d) $460,300.50, due on January 1, 2007; and (e) $454,270.45, due on April 1, 2007.

11.    At all relevant times herein, Plaintiffs have performed all of the covenants and promises required on their part to be performed in accordance with the terms and conditions of the Agreement.

12.    Based on the above breach, Plaintiffs have made a written demand on August 21, 2006 (the "Demand Letter") that ClassicStar make the payments which were due on April 1, 2006, and on July 1, 2006. A copy of the referenced Demand Letter is attached hereto as Exhibit "B".

13.    ClassicStar has not responded to the Demand Letter, and has not made the April 1, 2006 payment or the July 1, 2006 payment or any subsequent payment.

14.    ClassicStar's failure to even acknowledge or respond to the Demand Letter, as well as its failure to make the April 1, 2006, July 1, 2006, October 1, 2006, January 1, 2007 and April 1, 2007 payments, evidence that it is fruitless for Plaintiffs to make additional demands for additional payments which are currently owing, or which may become owing under the Agreement.

owles & Verna LLP
11 N. California Blvd.
Suite 875

15.     ClassicStar's failure to even acknowledge or respond to the Demand Letter, as well as its failure to make the April 1, 2006, July 1, 2006 October 1, 2006, January 1, 2007 and April 1, 2007 payments, evidence that ClassicStar has no intention of making any of the remaining payments which are currently owing or which may become owing under the Agreement.

16.     As of the date of this complaint, there is due and owing from ClassicStar to Plaintiffs the principal sum of at least $2,130,598.90, together with interest as allowed by law.

17.     Defendant ClassicStar, by virtue of the above conduct, has additionally repudiated and/or anticipatorily breached the Agreement. As such, all payment amounts set forth on the Payment Schedule are immediately due and owing.

18.     As a direct and proximate result of the breach and anticipatory breach of the Agreement by defendant ClassicStar, Plaintiffs have sustained damages in the principal amount of at least $6,462,933.43, together with interest as allowed by law.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

19.     Plaintiffs re-allege and incorporate Paragraphs 1 through 18 above as though fully set forth herein.

20.     By virtue of the monies invested by Plaintiffs with ClassicStar, Defendant ClassicStar has been unjustly enriched by the sum of at least $6,462,933.43, or such other and greater amounts as may be proven at trial.

21.     It would be unfair to allow ClassicStar to retain the benefits of the monies which Plaintiffs have invested with it. To avoid any unjust enrichment to ClassicStar, Defendant ClassicStar should be required to pay Plaintiffs the sum of at least $6,462,933.43, or such other and greater amounts as may be proven at trial.

-4-

Bowles & Verna LLP
21 N. California Blvd.
Suite 875

COMPLAINT FOR DAMAGES

15.    ClassicStar's failure to even acknowledge or respond to the Demand Letter, as well as its failure to make the April 1, 2006, July 1, 2006 October 1, 2006, January 1, 2007 and April 1, 2007 payments, evidence that ClassicStar has no intention of making any of the remaining payments which are currently owing or which may become owing under the Agreement.

16.    As of the date of this complaint, there is due and owing from ClassicStar to Plaintiffs the principal sum of at least $2,130,598.90, together with interest as allowed by law.

17.    Defendant ClassicStar, by virtue of the above conduct, has additionally repudiated and/or anticipatorily breached the Agreement.  As such, all payment amounts set forth on the Payment Schedule are immediately due and owing.

18.    As a direct and proximate result of the breach and anticipatory breach of the Agreement by defendant ClassicStar, Plaintiffs have sustained damages in the principal amount of at least $6,462,933.43, together with interest as allowed by law.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

19.    Plaintiffs re-allege and incorporate Paragraphs 1 through 18 above as though fully set forth herein.

20.    By virtue of the monies invested by Plaintiffs with ClassicStar, Defendant ClassicStar has been unjustly enriched by the sum of at least $6,462,933.43, or such other and greater amounts as may be proven at trial.

21.    It would be unfair to allow ClassicStar to retain the benefits of the monies which Plaintiffs have invested with it.  To avoid any unjust enrichment to ClassicStar, Defendant ClassicStar should be required to pay Plaintiffs the sum of at least $6,462,933.43, or such other and greater amounts as may be proven at trial.

-4-

Jowles & Verna LLP
21 N. California Blvd.
Suite 875

1    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

2  follows:

3    1.    For damages in the amount of at least $6,462,933.43, or such other and greater

4  amounts as may be proven at trial;

5

6    2.    For an award of prejudgment and post-judgment interest as allowed by law; and

7    3.    For such other and further relief as the Court deems just, proper and equitable.

8

9  DATED:  April 18, 2007                         BOWLES & VERNA LLP

10

11                                        By: _____

12                                              KENNETH B. McKENZIE
                                              Attorneys for Plaintiffs
13                                            Peter Fortenbaugh and Betty Lee,
                                              in their capacity as Trustees of the
14                                            Peter Fortenbaugh Trust

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as

2 follows:

3      1.    For damages in the amount of at least $6,462,933.43, or such other and greater

4 amounts as may be proven at trial;

5

6      2.    For an award of prejudgment and post-judgment interest as allowed by law; and

7      3.    For such other and further relief as the Court deems just, proper and equitable.

8

9 DATED: April 18, 2007           BOWLES & VERNA LLP

10

11

12               By:  _____

13                   KENNETH B. McKENZIE
                         Attorneys for Plaintiffs

14                   Peter Fortenbaugh and Betty Lee,
                         in their capacity as Trustees of the

15                   Peter Fortenbaugh Trust

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

wles & Verna LLP
1 N. California Blvd.
Suite B75

EXHIBIT A

# EXHIBIT A

# ClassicStar Financial Services Corporation

2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Ph.: (989) 773-7050
Fax: (989) 773-0006

## EQUINE AND WORKING INTEREST PURCHASE AGREEMENT

This Equine and Working Interest Purchase Agreement (hereinafter referred to as "Agreement") is made and entered into as of this 3○ day of September, 2005, by and between ClassicStar Financial Services, Inc. of 2480 W. Campus Drive, Bldg. C, Mt. Pleasant MI 48858 (hereinafter referred to as "Buyer") and The Peter Fortenbaugh Trust, of 1106 Hamilton Avenue, Palo Alto, California 94301 (hereinafter referred to as "Investor" or the "Seller");

WHEREAS, Seller originally invested (hereinafter referred to as "Investment") and entered into certain agreements in 2001 with ClassicStar LLC (hereinafter referred to as "ClassicStar") for the express purpose of leasing and breeding Mares (hereinafter referred to as "mare lease" or "mare lease interest");

WHEREAS, pursuant to Seller's Investment, *supra*, Seller acquired certain equine breeding and ownership rights pursuant to its execution and performance of certain agreements with Buyer, including but not limited to a Mare Lease & Breeding Agreement, Boarding Agreement, Foal Agreement, Nominee Agreement, and Horse Board & Services Agreement (hereinafter collectively referred to as "Contract Documents" or "the Contract Documents"); and

WHEREAS, Seller, further pursuant to the Investment, in July 2002 converted a certain portion of their Investment, being Seven Hundred Sixty-Six Thousand One Hundred Eight Dollars ($766,108) into the 2002 Powder River Basin Drilling Program (hereinafter referred to as "Working Interest", and collectively with "mare lease" as "Investments");

WHEREAS, the parties to this Agreement now wish to evidence the sale, transfer, assignment, delegation and assumption of all of those certain equine breeding and ownership rights, interests and duties, including, but not limited to, any living equine personal property and assets, whether registered or unregistered with any association, whether domestic or foreign (as referenced on the attached Exhibit "A"), as well as any and all working interests in the 2002 Powder River Basin Drilling Program, (hereinafter collectively referred to as "the Assets" or "Assets"), in accordance with the terms and conditions of this Agreement; and

# ClassicStar Financial Services Corporation

2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Ph.: (989) 773-7050
Fax: (989) 773-0006

## EQUINE AND WORKING INTEREST PURCHASE AGREEMENT

This Equine and Working Interest Purchase Agreement (hereinafter referred to as "Agreement") is made and entered into as of this 3⊙ day of September, 2005, by and between ClassicStar Financial Services, Inc. of 2480 W. Campus Drive, Bldg. C, Mt. Pleasant MI 48858 (hereinafter referred to as "Buyer") and The Peter Fortenbaugh Trust, of 1106 Hamilton Avenue, Palo Alto, California 94301 (hereinafter referred to as "Investor" or the "Seller").

WHEREAS, Seller originally invested (hereinafter referred to as "Investment") and entered into certain agreements in 2001 with ClassicStar LLC (hereinafter referred to as "ClassicStar") for the express purpose of leasing and breeding Mares (hereinafter referred to as "mare lease" or "mare lease interest");

WHEREAS, pursuant to Seller's Investment, *supra*, Seller acquired certain equine breeding and ownership rights pursuant to its execution and performance of certain agreements with Buyer, including but not limited to a Mare Lease & Breeding Agreement, Boarding Agreement, Foal Agreement, Nominee Agreement, and Horse Board & Services Agreement (hereinafter collectively referred to as "Contract Documents" or "the Contract Documents"); and

WHEREAS, Seller, further pursuant to the Investment, in July 2002 converted a certain portion of their Investment, being Seven Hundred Sixty-Six Thousand One Hundred Eight Dollars ($766,108) into the 2002 Powder River Basin Drilling Program (hereinafter referred to as "Working Interest", and collectively with "mare lease" as "Investments");

WHEREAS, the parties to this Agreement now wish to evidence the sale, transfer, assignment, delegation and assumption of all of those certain equine breeding and ownership rights, interests and duties, including, but not limited to, any living equine personal property and assets, whether registered or unregistered with any association, whether domestic or foreign (as referenced on the attached Exhibit "A"), as well as any and all working interests in the 2002 Powder River Basin Drilling Program, (hereinafter collectively referred to as "the Assets" or "Assets"), in accordance with the terms and conditions of this Agreement; and

WHEREAS, the parties wish this agreement to act as, and provide evidence of, either by way of the entire agreement, or as required in a notice containing certain of the terms and conditions herein, a bill of Sale, Assignment and Assumption; and

NOW, THEREFORE, in consideration of the promises, mutual representations, warranties and covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## I.
## TERMS

A.    Sale and Assignment. In exchange for the payment of consideration stated herein, *infra*, Seller hereby sells, assigns, conveys, transfers and forever delivers to Buyer any and all right, title and interest of Seller in and to the assets. Seller shall retain no equine breeding and ownership interests, as well as no working interests or right to convert to shares of any other entity from the working interest, whether knowingly conveyed or not conveyed to Buyer in connection with this Agreement and not otherwise previously disposed of, that Seller acquired pursuant to the Contract Documents. Consideration shall consist of, and be paid in accordance with, the following schedule of terms:

1.    CASH:    Principal of Six Million One Hundred Thousand Dollars ($6,100,000.00) plus interest at a rate of 6%. Interest shall begin to accrue on September 1, 2005. Said principal and interest is to be paid in the amounts and on the dates shown on the attached schedule "Exhibit B". As such, any consummation of payments pursuant to the terms and conditions of this agreement shall be specifically subject to the following:

   a.    Seller acknowledges that they (a) are competent to understand and does understand the nature of this transaction, and (b) are able to bear the economic risk.

   b.    Seller has sufficient resources and the requisite investment knowledge and experience to enter into this transaction and meets one of the qualifications for "Accredited Investor," as such term is defined under Regulation D of the Securities Act of 1933, as amended.

2.    Seller shall further deliver an Assignment duly executed for all of Seller's right, title and interest in and to the Assets, in whatever form provided or requested by Buyer.

WHEREAS, the parties wish this agreement to act as, and provide evidence of, either by way of the entire agreement, or as required in a notice containing certain of the terms and conditions herein, a bill of Sale, Assignment and Assumption; and

NOW, THEREFORE, in consideration of the promises, mutual representations, warranties and covenants contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## I.
## TERMS

A.    Sale and Assignment. In exchange for the payment of consideration stated herein, *infra*, Seller hereby sells, assigns, conveys, transfers and forever delivers to Buyer any and all right, title and interest of Seller in and to the assets. Seller shall retain no equine breeding and ownership interests, as well as no working interests or right to convert to shares of any other entity from the working interest, whether knowingly conveyed or not conveyed to Buyer in connection with this Agreement and not otherwise previously disposed of, that Seller acquired pursuant to the Contract Documents. Consideration shall consist of, and be paid in accordance with, the following schedule of terms:

    1.    <u>CASH</u>:    Principal of Six Million One Hundred Thousand Dollars ($6,100,000.00) plus interest at a rate of 6%. Interest shall begin to accrue on September 1, 2005. Said principal and interest is to be paid in the amounts and on the dates shown on the attached schedule "Exhibit B". As such, any consummation of payments pursuant to the terms and conditions of this agreement shall be specifically subject to the following:

        a.    Seller acknowledges that they (a) are competent to understand and does understand the nature of this transaction, and (b) are able to bear the economic risk.

        b.    Seller has sufficient resources and the requisite investment knowledge and experience to enter into this transaction and meets one of the qualifications for "Accredited Investor," as such term is defined under Regulation D of the Securities Act of 1933, as amended.

    2.    Seller shall further deliver an Assignment duly executed for all of Seller's right, title and interest in and to the Assets, in whatever form provided or requested by Buyer.

3.  The outstanding indebtedness owed to NELC, secured by the mare interests referenced in this agreement, will mature as of January 1, 2006.  The sum due at that time will be One Million Three Thousand Three Hundred Seventy Dollars and Sixty-Seven Cents ($1,003,370.67).  Buyer shall pay, directly to NELC, for the benefit of Seller, that amount owed on the NELC obligation referenced herein, on or before January 1, 2006.

## II.
## REPRESENTATIONS & WARRANTIES

A.    **Seller's Representations & Warranties.**  Seller hereby represents and warrants the following in connection with the execution, delivery and performance of this Agreement:

1.    This offer for sale of the Assets was not solicited in any manner by the Buyer.  Further this offer did not involve: (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium, or broadcast via television or radio, or (b) any other form of general solicitation or advertising.

2.    Seller recognizes that the Assets were not registered under the Securities Act of 1933 or other applicable state securities laws.  Seller further acknowledges that Buyer was under no obligation to register the Assets or to assist Seller in complying with any exemption from registration.

3.    With the exception of certain indebtedness of NELC, Seller holds of record and/or owns beneficially the Assets free and clear of any restrictions on transfer, taxes, security interests, purchase rights, contracts, commitments, restrictions, liens, security interests, pledges, encumbrances, equities, claims, or demands; therefore, Seller has and will convey to Buyer hereunder good and marketable title to all of the Assets, free and clear of all defects, liens, taxes, charges, lease or conditional sale obligations, licenses, and other encumbrances, defects or rights in third parties.  The Seller has full power and authority to execute and deliver this Agreement and to perform his obligations under it.

4.    The Seller has received and carefully reviewed this Agreement, and has relied solely on the terms of the agreement as contained or referenced herein.

5.    Seller recognizes that this Purchase Agreement has not been reviewed, approved or disapproved by any governmental or regulatory agency, nor has any such agency passed upon the adequacy or accuracy thereof.

6.    Neither the company, nor their respective directors, officers or other representatives, has made any statement, representation or warranty that in any

3. The outstanding indebtedness owed to NELC, secured by the mare interests referenced in this agreement, will mature as of January 1, 2006. The sum due at that time will be One Million Three Thousand Three Hundred Seventy Dollars and Sixty-Seven Cents ($1,003,370.67). Buyer shall pay, directly to NELC, for the benefit of Seller, that amount owed on the NELC obligation referenced herein, on or before January 1, 2006.

## II.
## REPRESENTATIONS & WARRANTIES

A.    Seller's Representations & Warranties. Seller hereby represents and warrants the following in connection with the execution, delivery and performance of this Agreement:

1. This offer for sale of the Assets was not solicited in any manner by the Buyer. Further this offer did not involve: (a) any advertisement, article, notice or other communication published in any newspaper, magazine or similar medium, or broadcast via television or radio, or (b) any other form of general solicitation or advertising.

2. Seller recognizes that the Assets were not registered under the Securities Act of 1933 or other applicable state securities laws. Seller further acknowledges that Buyer was under no obligation to register the Assets or to assist Seller in complying with any exemption from registration.

3. With the exception of certain indebtedness of NELC, Seller holds of record and/or owns beneficially the Assets free and clear of any restrictions on transfer, taxes, security interests, purchase rights, contracts, commitments, restrictions, liens, security interests, pledges, encumbrances, equities, claims, or demands; therefore, Seller has and will convey to Buyer hereunder good and marketable title to all of the Assets, free and clear of all defects, liens, taxes, charges, lease or conditional sale obligations, licenses, and other encumbrances, defects or rights in third parties. The Seller has full power and authority to execute and deliver this Agreement and to perform his obligations under it.

4. The Seller has received and carefully reviewed this Agreement, and has relied solely on the terms of the agreement as contained or referenced herein.

5. Seller recognizes that this Purchase Agreement has not been reviewed, approved or disapproved by any governmental or regulatory agency, nor has any such agency passed upon the adequacy or accuracy thereof.

6. Neither the company, nor their respective directors, officers or other representatives, has made any statement, representation or warranty that in any

manner influenced or was taken into account or relied upon by Seller in deciding whether to enter into this Agreement. Seller has not, in any manner in deciding to enter into this Agreement, relied on statements by directors, officers or other representatives with respect to the Assets or the Buyer's business or prospects. Seller has decided to enter into this Agreement based on their own independent investigation and for their own purposes, which are entirely independent of any analysis of the short- or long-term value or prospects of the Assets.

7.    The Seller acknowledges that the Buyer has not made any representations regarding the potential tax impact of this transaction.

8.    Seller has the full capacity, power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and this Agreement is binding upon Seller and is enforceable against Seller in accordance with its terms.

9.    The execution and delivery of this Agreement by Seller and the sale of the Assets pursuant hereto will not conflict with, or result in a breach of or a default under, or give rise to a right of acceleration under, any agreement or instrument to which Seller is a party or by which Seller is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which Seller is subject or by which Seller is bound, save and except for that certain indebtedness which may be owed to NELC.

10.   No equine or other selling or purchasing agent, broker, finder or other person acting in a similar capacity has participated on behalf of Seller in connection with the transactions contemplated by this Agreement. Seller will reimburse and indemnify the Buyer for any fees or expenses of any agent, broker, finder or other person acting in a similar manner hired or engaged by Seller.

11.   Seller makes no representations or warranties to Buyer concerning the fitness of purpose of the mare interests.

12.   Seller, for itself and its successors and assigns, hereby covenants and agrees that, from time to time, it shall execute and deliver, or shall cause to be executed and delivered, such documents and instruments and shall take, or cause to be taken, such further or other actions as Buyer may reasonably deem necessary or appropriate to sell, assign, convey, transfer and deliver the interests to Buyer or to evidence any of the foregoing. This assurance includes, but is not limited, to the execution and filing of a change of ownership certificate of registration with any association or registry, if or as necessary. Seller shall also provide Buyer with a copy of any vet records and any other records in Buyer's possession which the Buyer may, from time to time, request.

manner influenced or was taken into account or relied upon by Seller in deciding whether to enter into this Agreement. Seller has not, in any manner in deciding to enter into this Agreement, relied on statements by directors, officers or other representatives with respect to the Assets or the Buyer's business or prospects. Seller has decided to enter into this Agreement based on their own independent investigation and for their own purposes, which are entirely independent of any analysis of the short- or long-term value or prospects of the Assets.

7.   The Seller acknowledges that the Buyer has not made any representations regarding the potential tax impact of this transaction.

8.   Seller has the full capacity, power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and this Agreement is binding upon Seller and is enforceable against Seller in accordance with its terms.

9.   The execution and delivery of this Agreement by Seller and the sale of the Assets pursuant hereto will not conflict with, or result in a breach of or a default under, or give rise to a right of acceleration under, any agreement or instrument to which Seller is a party or by which Seller is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which Seller is subject or by which Seller is bound, save and except for that certain indebtedness which may be owed to NELC.

10.  No equine or other selling or purchasing agent, broker, finder or other person acting in a similar capacity has participated on behalf of Seller in connection with the transactions contemplated by this Agreement. Seller will reimburse and indemnify the Buyer for any fees or expenses of any agent, broker, finder or other person acting in a similar manner hired or engaged by Seller.

11.  Seller makes no representations or warranties to Buyer concerning the fitness of purpose of the mare interests.

12.  Seller, for itself and its successors and assigns, hereby covenants and agrees that, from time to time, it shall execute and deliver, or shall cause to be executed and delivered, such documents and instruments and shall take, or cause to be taken, such further or other actions as Buyer may reasonably deem necessary or appropriate to sell, assign, convey, transfer and deliver the interests to Buyer or to evidence any of the foregoing. This assurance includes, but is not limited, to the execution and filing of a change of ownership certificate of registration with any association or registry, if or as necessary. Seller shall also provide Buyer with a copy of any vet records and any other records in Buyer's possession which the Buyer may, from time to time, request.

B.      Buyer's Representations & Warranties. Buyer hereby represents and warrants the following in connection with its execution, delivery and performance of this Agreement:

1.      The Buyer has the full power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and this Agreement is binding upon the Buyer and is enforceable against the Buyer in accordance with its terms.

2.      The execution and delivery of this Agreement by the Buyer and the purchase of the Assets pursuant hereto will not conflict with, or result in a breach or a default under, or give rise to a right of acceleration under, any agreement or instrument to which the Buyer is a party or by which the Buyer is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which the Buyer is subject or by which the Buyer is bound.

3.      The Buyer shall be liable for any expenses or other costs for which it is liable because of the terms of this agreement.

4.      The Buyer covenants and promises to make all payments to Seller in accordance with the terms and conditions as stated in this agreement.

5.      Buyer hereby assumes and agrees to take ownership and possession of the assets and to pay, perform and discharge all obligations and liabilities associated herewith beginning and effective the date of this Agreement. Buyer shall not be responsible for, or obligated to pay, any debts or obligations associated with the assets which arose or were accrued before the date of this Agreement.

6.      Any and all obligations of Buyer per this agreement shall be secured by collateral, with said collateral secured under terms and conditions of that certain Escrow Agreement, which is separate and apart from this agreement. Any default, which terms of default shall be governed by the provision III(9), *infra*, shall be satisfied only out of proceeds of the collateral per the terms and conditions of the Escrow Agreement.

7.      Buyer acknowledges that if, and only if, there is a sale or change of control of the company called Gastar Exploration Ltd. ("event"), and if the event enables Buyer to liquidate all of its Gastar shares pursuant to cash being the exclusive, material part of the event, then Buyer shall accelerate payments to Seller required herein, inclusive of interest, with said acceleration to be one lump-sum payment, totaling the remaining amount owed under this agreement, as of the date of the event which accelerates payment. Said accelerated payment shall be made no later than ninety (90) days of the date of the event.

B.     Buyer's Representations & Warranties. Buyer hereby represents and warrants the following in connection with its execution, delivery and performance of this Agreement:

1.     The Buyer has the full power and authority to enter into this Agreement and to carry out the transactions and agreements contemplated hereby and this Agreement is binding upon the Buyer and is enforceable against the Buyer in accordance with its terms.

2.     The execution and delivery of this Agreement by the Buyer and the purchase of the Assets pursuant hereto will not conflict with, or result in a breach or a default under, or give rise to a right of acceleration under, any agreement or instrument to which the Buyer is a party or by which the Buyer is bound, or violate any law, rule or regulation of any governmental body or agency or any order, writ, injunction or decree of any court or governmental body or agency to which the Buyer is subject or by which the Buyer is bound.

3.     The Buyer shall be liable for any expenses or other costs for which it is liable because of the terms of this agreement.

4.     The Buyer covenants and promises to make all payments to Seller in accordance with the terms and conditions as stated in this agreement.

5.     Buyer hereby assumes and agrees to take ownership and possession of the assets and to pay, perform and discharge all obligations and liabilities associated herewith beginning and effective the date of this Agreement. Buyer shall not be responsible for, or obligated to pay, any debts or obligations associated with the assets which arose or were accrued before the date of this Agreement.

6.     Any and all obligations of Buyer per this agreement shall be secured by collateral, with said collateral secured under terms and conditions of that certain Escrow Agreement, which is separate and apart from this agreement. Any default, which terms of default shall be governed by the provision III(9), *infra*, shall be satisfied only out of proceeds of the collateral per the terms and conditions of the Escrow Agreement.

7.     Buyer acknowledges that if, and only if, there is a sale or change of control of the company called Gastar Exploration Ltd. ("event"), and if the event enables Buyer to liquidate all of its Gastar shares pursuant to cash being the exclusive, material part of the event, then Buyer shall accelerate payments to Seller required herein, inclusive of interest, with said acceleration to be one lump-sum payment, totaling the remaining amount owed under this agreement, as of the date of the event which accelerates payment. Said accelerated payment shall be made no later than ninety (90) days of the date of the event.

## III.
## GENERAL TERMS

The Seller and the Buyer agree as follows:

1. <u>Full Conveyance.</u> The transfer of the Assets to the Buyer shall constitute the full and final conveyance of all of Seller's right, title and interest in and to the Assets transferred.

2. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the Seller and the Buyer regarding the offer and sale of the Assets, which Seller is selling, and may be amended only by a writing executed by all parties. This Agreement may not be terminated, canceled or revoked by the Seller once delivered to the Buyer and shall survive the death or disability of the undersigned, and shall be binding on the heirs and assigns of the parties hereto.

3. <u>Counterparts, Facsimile.</u> This Agreement may be executed in any number of counterparts, each of which shall be treated as an original but all of which, collectively, shall constitute a single instrument. This Agreement may also be executed by signatures to facsimile transmittal documents in lieu of original or machine generated or copied documents.

4. <u>Severability.</u> If any provision of this Agreement is illegal, invalid or unenforceable under applicable law, then that provision shall be null and void to the extent necessary to overcome the illegality, invalidity or unenforceability, and the remaining provisions of this Agreement shall not be affected, unless the severance or deletion of the provision alters the intention of the parties and the commercial efficacy of this Agreement.

5. <u>Installments.</u> Once Seller has received all Asset assignments in formats approved and provided by the Buyer, Buyer may delay, cancel or recover payment if all relevant asset assignments are not timely delivered and properly endorsed for transfer.

6. <u>Governing Law.</u> This Agreement shall be enforced, governed by and construed in all respects in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles. Venue and jurisdiction shall lie exclusively within the State of Michigan for any and all claims or actions related to, arising from or in connection with this offer and Agreement. Any legal proceedings shall be vested and brought solely by either Seller or Buyer, and not as part of, or in cooperation with any other person not a party to this agreement, in any other proceeding.

## III.
## GENERAL TERMS

The Seller and the Buyer agree as follows:

1.  Full Conveyance. The transfer of the Assets to the Buyer shall constitute the full and final conveyance of all of Seller's right, title and interest in and to the Assets transferred.

2.  Entire Agreement. This Agreement constitutes the entire agreement between the Seller and the Buyer regarding the offer and sale of the Assets, which Seller is selling, and may be amended only by a writing executed by all parties. This Agreement may not be terminated, canceled or revoked by the Seller once delivered to the Buyer and shall survive the death or disability of the undersigned, and shall be binding on the heirs and assigns of the parties hereto.

3.  Counterparts, Facsimile. This Agreement may be executed in any number of counterparts, each of which shall be treated as an original but all of which, collectively, shall constitute a single instrument. This Agreement may also be executed by signatures to facsimile transmittal documents in lieu of original or machine generated or copied documents.

4.  Severability. If any provision of this Agreement is illegal, invalid or unenforceable under applicable law, then that provision shall be null and void to the extent necessary to overcome the illegality, invalidity or unenforceability, and the remaining provisions of this Agreement shall not be affected, unless the severance or deletion of the provision alters the intention of the parties and the commercial efficacy of this Agreement.

5.  Installments. Once Seller has received all Asset assignments in formats approved and provided by the Buyer, Buyer may delay, cancel or recover payment if all relevant asset assignments are not timely delivered and properly endorsed for transfer.

6.  Governing Law. This Agreement shall be enforced, governed by and construed in all respects in accordance with the laws of the State of Michigan, without regard to conflicts of laws principles. Venue and jurisdiction shall lie exclusively within the State of Michigan for any and all claims or actions related to, arising from or in connection with this offer and Agreement. Any legal proceedings shall be vested and brought solely by either Seller or Buyer, and not as part of, or in cooperation with any other person not a party to this agreement, in any other proceeding.

7.    Confidentiality. The terms and conditions of this Agreement and all matters between the Seller and the Buyer shall remain confidential and shall not be disclosed to any party without prior written permission from the Buyer, except where required by a written court order or applicable law.

8.    Binding Effect. This Agreement shall be binding upon the heirs, successors and assigns of the parties hereto. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned by either of the parties to this Agreement without the prior written consent of the Buyer.

9.    Default. Should there be any default by Buyer pursuant to this Agreement regarding payment of any amount, Buyer shall have thirty (30) days to cure the default. If default of payment is not cured within 30 days, then Seller shall have right of recourse against collateral, governed by that certain Escrow Agreement, referenced in II(B)6, *supra*. Any other default by either Buyer or Seller not involving payment of monies shall be cured within a thirty (30) day period by best efforts of the defaulting party. If the default is not cured, then the non-defaulting party shall have right to seek redress against defaulting party in a court of competent jurisdiction pursuant to section III(6), *supra*.

10.    Force Majeure. Neither party shall be considered in default hereunder or be liable for any failure to perform or delay in performing any provisions of this Agreement in the customary manner to the extent that such failure or delay shall be caused by any reason beyond its control, including an act of God; fire, explosions, hostilities or war (declared or undeclared); striking or work stoppage involving either party's employees or governmental restrictions; financial purposes; or any governmental act; provided that the party declaring force majeure shall give notice to the other party promptly and in writing of the commencement of the condition, the nature, and the termination of the force majeure condition. The party whose performance has been interrupted by such circumstances shall use every reasonable means to resume full performance of this Agreement as promptly as possible.

SELLER SPECIFICALLY RELEASES THE BUYER FROM ANY AND ALL MANNER OF ACTION, CAUSES OF ACTION; CLAIMS, CHARGES, SUITS, DAMAGES, DEMANDS AND OBLIGATIONS OR LIABILITIES OF WHATSOEVER NATURE, WHETHER IN LAW OR IN EQUITY, FOR ANY CLAIMS FOR LOST PROFITS OR LOST OPPORTUNITY RELATED TO SELLER'S OFFER AND SALE OF THE ASSETS TO THE BUYER.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the 20 day of September, 2005.

7. **Confidentiality.** The terms and conditions of this Agreement and all matters between the Seller and the Buyer shall remain confidential and shall not be disclosed to any party without prior written permission from the Buyer, except where required by a written court order or applicable law.

8. **Binding Effect.** This Agreement shall be binding upon the heirs, successors and assigns of the parties hereto. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned by either of the parties to this Agreement without the prior written consent of the Buyer.

9. **Default.** Should there be any default by Buyer pursuant to this Agreement regarding payment of any amount, Buyer shall have thirty (30) days to cure the default. If default of payment is not cured within 30 days, then Seller shall have right of recourse against collateral governed by that certain Escrow Agreement, referenced in II(B)6, *supra*. Any other default by either Buyer or Seller not involving payment of monies shall be cured within a thirty (30) day period by best efforts of the defaulting party. If the default is not cured, then the non-defaulting party shall have right to seek redress against defaulting party in a court of competent jurisdiction pursuant to section III(6), *supra*.

10. **Force Majeure.** Neither party shall be considered in default hereunder or be liable for any failure to perform or delay in performing any provisions of this Agreement in the customary manner, to the extent that such failure or delay shall be caused by any reason beyond its control, including an act of God; fire, explosions, hostilities or war (declared or undeclared); striking or work stoppage involving either party's employees or governmental restrictions; financial purposes; or any governmental act; provided that the party declaring force majeure shall give notice to the other party promptly and in writing of the commencement of the condition, the nature, and the termination of the force majeure condition. The party whose performance has been interrupted by such circumstances shall use every reasonable means to resume full performance of this Agreement as promptly as possible.

SELLER SPECIFICALLY RELEASES THE BUYER FROM ANY AND ALL MANNER OF ACTION, CAUSES OF ACTION, CLAIMS, CHARGES, SUITS, DAMAGES, DEMANDS AND OBLIGATIONS OR LIABILITIES OF WHATSOEVER NATURE, WHETHER IN LAW OR IN EQUITY, FOR ANY CLAIMS FOR LOST PROFITS OR LOST OPPORTUNITY RELATED TO SELLER'S OFFER AND SALE OF THE ASSETS TO THE BUYER.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the 30 day of September, 2005.

Seller:
THE PETER FORTENBAUGH TRUST

Witness:                                             Peter Fortenbaugh, Trustee

_Kathryn Coun_                                       _P.J.T._
_____                             _____

Social Security or other Taxpayer I.D. No.: _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_

Witness:                                             Betty Lee, Trustee

_Kathryn Coun_                                       _B.Lee_
_____                             _____

Social Security or other Taxpayer I.D. No.: _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_


ACCEPTED AND AGREED:
ClassicStar Financial Services, Inc., a Delaware corporation ("the Company")

By: _____
Its: _____

Dated:  September _____, 2005

Please mail or otherwise deliver two (2) executed copies of this Agreement to:

CLASSICSTAR FINANCIAL SERVICES, INC.
2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Phone: (989)773-7050
Fax:   (989) 773-0006

Seller:
THE PETER FORTENBAUGH TRUST

Witness:

Peter Fortenbaugh, Trustee

Social Security or other Taxpayer I.D. No.: 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

Witness:

Betty Lee, Trustee

Social Security or other Taxpayer I.D. No.: 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

ACCEPTED AND AGREED:
ClassicStar Financial Services, Inc., a Delaware corporation ("the Company")

By: _____
Its: _____

Dated:  September _____, 2005

Please mail or otherwise deliver two (2) executed copies of this Agreement to:

CLASSICSTAR FINANCIAL SERVICES, INC.
2480 W. Campus Drive, Bldg. C
Mt. Pleasant, Michigan 48858
Phone: (989)773-7050
Fax:   (989) 773-0006

**EXHIBIT A**
**EQUINE INTERESTS**
**ALLOCATION OF PURCHASE PRICE**

| DESCRIPTION OF EQUINE INTERESTS | AGREED ALLOCATION OF PURCHASE PRICE |
| --- | --- |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL PURCHASE PRICE | $6,100,000.00 |

**EXHIBIT A**
**EQUINE INTERESTS**
**ALLOCATION OF PURCHASE PRICE**

| DESCRIPTION OF EQUINE INTERESTS | AGREED ALLOCATION OF PURCHASE PRICE |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| TOTAL PURCHASE PRICE | $6,100,000.00 |

EXHIBIT B
PAYMENT SCHEDULE

Beginning September 15, 2005

| DATE | PAYMENT |
|------|---------|
| 9/15/05 | $314,038.36 |
| 4/1/06 | $1,191,907.75 |
| 7/1/06 | $472,360.60 |
| 10/1/06 | $466,330.55 |
| 1/1/07 | $460,300.50 |
| 4/1/07 | $454,270.45 |
| 7/1/07 | $448,240.40 |
| 10/1/07 | $442,210.35 |
| 1/1/08 | $436,180.30 |
| 7/1/08 | $1,060,755.02 |
| 1/1/09 | $1,030,377.51 |

EXHIBIT B
PAYMENT SCHEDULE

Beginning September 15, 2005

| DATE | PAYMENT |
|------|---------|
| 9/15/05 | $314,038.36 |
| 4/1/06 | $1,191,907.75 |
| 7/1/06 | $472,360.60 |
| 10/1/06 | $466,330.55 |
| 1/1/07 | $460,300.50 |
| 4/1/07 | $454,270.45 |
| 7/1/07 | $448,240.40 |
| 10/1/07 | $442,210.35 |
| 1/1/08 | $436,180.30 |
| 7/1/08 | $1,060,755.02 |
| 1/1/09 | $1,030,377.51 |

# EXHIBIT B

# EXHIBIT B



DAVID W. SCOFIELD
ATTORNEY AT LAW

PETERS SCOFIELD PRICE
A PROFESSIONAL CORPORATION

dws@psplawyers.com

August 21, 2006

ClassicStar Financial Services, Inc.
2480 West Campus Drive Building C
Mt. Pleasant, Michigan 48858

> Re:    Demand For Payment– Equine and Working Interest Purchase
> Agreement - The Peter Fortenbaugh Trust

Dear Sirs:

This law firm has been engaged by The Peter Fortenbaugh Trust (the "Trust") to resolve the existing default under the referenced Equine and Working Interest Purchase Agreement and to demand payment for all sums due and owing under such instrument. Should ClassicStar Financial Services, Inc. ("ClassicStar") not be in a position to cure its default immediately, I have been authorized to pursue the possibility of negotiating a modification of the existing agreement or, alternatively, to take all such action as may be necessary to collect.

This letter constitutes notice of default of the April 1, 2006 payment in the sum of $1,191,907.75 and the July 1, 2006 payment in the sum of 472,360.60. If such default is not cured within 30 days of today's date, or in other words, on or before Monday, September 18, 2006, the Trust shall exercise any and all remedies at law or in equity that it may have available to it, for such default and *ex contractu*. If ClassicStar desires to engage in an amicable resolution to this dispute, however, please let me know when you would be available to discuss these matters.

Very truly yours,

PETERS SCOFIELD PRICE
A Professional Corporation

David W. Scofield

DWS:t



DAVID W. SCOFIELD
ATTORNEY AT LAW

PETERS SCOFIELD PRICE
A PROFESSIONAL CORPORATION

dws@psplawyers.com

August 21, 2006

ClassicStar Financial Services, Inc.
2480 West Campus Drive Building C
Mt. Pleasant, Michigan 48858

      Re:    *Demand For Payment-- Equine and Working Interest Purchase Agreement - The Peter Fortenbaugh Trust*

Dear Sirs:

    This law firm has been engaged by The Peter Fortenbaugh Trust (the "Trust") to resolve the existing default under the referenced Equine and Working Interest Purchase Agreement and to demand payment for all sums due and owing under such instrument. Should ClassicStar Financial Services, Inc. ("ClassicStar") not be in a position to cure its default immediately, I have been authorized to pursue the possibility of negotiating a modification of the existing agreement or, alternatively, to take all such action as may be necessary to collect.

    This letter constitutes notice of default of the April 1, 2006 payment in the sum of $1,191,907.75 and the July 1, 2006 payment in the sum of 472,360.60. If such default is not cured within 30 days of today's date, or in other words, on or before Monday, September 18, 2006, the Trust shall exercise any and all remedies at law or in equity that it may have available to it, for such default and *ex contractu*. If ClassicStar desires to engage in an amicable resolution to this dispute, however, please let me know when you would be available to discuss these matters.

               Very truly yours,

               PETERS SCOFIELD PRICE
               A Professional Corporation

               David W. Scofield

DWS:t

# CIVIL LAWSUIT NOTICE

CASE NUMBER: _____ **ATTACHMENT A**

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing):  Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANTS* (the person(s) being sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;

2. You must send a copy of your written response to the plaintiff; and

3. You must attend the first Case Management Conference.

   **Warning: If you do not do these three things, you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms.  You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing, 49 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.  You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

---

*Your Case Management Judge is:*  Neal A Cabrinha                                    *DEPT:* 10

*The first CMC is scheduled as follows:* (Completed by Clerk of Court)
    Date:  SEP 0 4 2007    Time: 3:45 PM  Dept.: 10

*The next CMC is scheduled as follows:* (Completed by party if the first CMC was continued or has passed)
    Date: _____  Time: _____  Dept.: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference.  Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2156) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CIVIL LAWSUIT NOTICE

# CIVIL LAWSUIT NOTICE

CASE NUMBER: _____

*107CV04507* ATTACHMENT A

Superior Court of California, County of Santa Clara
191 N. First St., San Jose, CA 95113

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing):  Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANTS* (the person(s) being sued):  You must do each of the following to protect your rights:

1. You must file a **written response** to the Complaint, in the clerk's office of the Court, within **30 days** of the date the *Summons* and *Complaint* were served on you;

2. You must send a copy of your written response to the plaintiff; and

3. You must attend the first Case Management Conference.

    **Warning: If you do not do these three things, you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing, 49 N. First St., San Jose (408-293-8177)

For other local information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC. You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.

---

*Your Case Management Judge is:* Neal A Cabrinha _____ *DEPT:* 10

*The first CMC is scheduled as follows:* (Completed by Clerk of Court)
        Date: SEP 0 4 2007    Time: 3:45 PM  Dept.: 10

*The next CMC is scheduled as follows:* (Completed by party if the first CMC was continued or has passed)
        Date: _____ Time: _____ Dept.: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2156) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CIVIL LAWSUIT NOTICE

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< ADR can save money. Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< ADR provides more participation. Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

# EXHIBIT C

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: |
|---|---|
| Fred M. Blum, SBN 1015860 | (415) 397-9006 |

BASSI, MARTINI, EDLIN & BLUM LLP
351 California Street, Suite 200

San Francisco, California 94104-2412

ATTORNEY FOR (Name): ClassicStar Financial Services, Inc. &
First Source Wyoming, Inc.

Insert name of court and name of judicial district and branch court, if any:
Santa Clara County

FOR COURT USE ONLY

ENDORSE

08 AUG 12 PH 4:08

David Yamasaki, Chief Executive Officer/Clerk
Superior Court of CA County of Santa Clara

By _____ G. Duarte
                    Deputy Clerk

PLAINTIFF/PETITIONER: Peter and Betty Lee Fortenbaugh,
as Trustees for The Peter Fortenbaugh Trust

DEFENDANT/RESPONDENT: ClassicStar Financial Services, Inc.

CASE NUMBER:
107 CV 084507

**REQUEST FOR DISMISSAL**

- [ ] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle   [ ] Other
- [ ] Family Law
- [ ] Eminent Domain ClassicStar Financial Services Inc. for
- [X] Other (specify): Breach of Contract; Unjust Enrichment

– A conformed copy will not be returned by the clerk unless a method of return is provided with the document. –

**BY FAX**

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) [ ] With prejudice   (2) [X] Without prejudice
   b. (1) [ ] Complaint   (2) [ ] Petition
      (3) [X] Cross-complaint filed by (name): Classicstar Financial Services, Inc   on (date): 7/9/2007
      (4) [ ] Cross-complaint filed by (name):   on (date):
      (5) [ ] Entire action of all parties and all causes of action
      (6) [ ] Other (specify):*

Date: 8-12-08

Fred M. Blum, SBN 1015860
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶ _____ (SIGNATURE)
Attorney or party without attorney for:

* If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

- [ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
- [X] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given **
Date:

_____
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶ _____ (SIGNATURE)
Attorney or party without attorney for:

** If a cross-complaint or Response (Family Law) seeking affirmative relief is on file, the attorney for cross-complainant (respondent) must sign this consent consent if required by Code of Civil Procedure section 581(i) or (j).

- [ ] Plaintiff/Petitioner   [ ] Defendant/Respondent
- [ ] Cross-complainant

(To be completed by clerk)

3. [ ] Dismissal entered as requested on (date): AUG 12 2008
4. [ ] Dismissal entered on (date):   as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify): AUG 12 2008
6. [ ] a. Attorney or party without attorney notified on (date):
      b. Attorney or party without attorney not notified. Filing party failed to provide
         [ ] a copy to conform   [ ] means to return conformed copy

Date: AUG 12 2008

DAVID H. YAMASAKI
Chief Executive Officer, Clerk

G. Duarte

Clerk, by _____, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. January 1, 2007]

**REQUEST FOR DISMISSAL**

Legal
Solutions
Plus

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390

# EXHIBIT D

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*: | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| Fred M. Blum, SBN 1015860 | (415) 397-9006 | **ENDORSED FILED** |

Fred M. Blum, SBN 1015860     (415) 397-9006
BASSI, MARTINI, EDLIN & BLUM LLP
351 California Street, Suite 200

San Francisco, California 94104-2412
First Source Wyoming, Inc. &
ATTORNEY FOR *(Name)*:   Classicstar Financial Services, Inc.

Insert name of court and name of judicial district and branch court, if any:

Santa Clara County

**FOR COURT USE ONLY**

**ENDORSED FILED**

08 AUG 12 PM 4: 07

David H. Yamasaki, Clerk of the Superior Court
County of Santa Clara, California
By _____
Deputy Clerk

G. Duarte

PLAINTIFF/PETITIONER: Peter and Betty Lee Fortenbaugh,
as Trustees for The Peter Fortenbaugh Trust
DEFENDANT/RESPONDENT: ClassicStar Financial Services,
Inc.

CASE NUMBER:
107 CV 084507

**REQUEST FOR DISMISSAL**

- [ ] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle ·    [ ] Other
- [ ] Family Law
- [ ] Eminent Domain First Source Wyoming, Inc. cause of
- [X] Other *(specify)*: action for Unjust Enrichment

- A conformed copy will not be returned by the clerk unless a method of return is provided with the document. -

1 TO THE CLERK: Please dismiss this action as follows:

  a  (1) [ ] With prejudice  (2) [X] Without prejudice

  b  (1) [ ] Complaint  (2) [ ] Petition

     (3) [X] Cross-complaint filed by *(name)*: First Source Wyoming, Inc  on *(date)*: 7/9/2007

     (4) [ ] Cross-complaint filed by *(name)*:  on *(date)*:

     (5) [ ] Entire action of all parties and all causes of action

     (6) [ ] Other *(specify)*:·

Date: 8-12-08

Fred M. Blum, SBN 1015860
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶ _____ (signature)
Attorney or party without attorney for:

**BY FAX**

- If dismissal requested is of specified parties only or specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[✓] Cross - complainant

2 TO THE CLERK: Consent to the above dismissal is hereby given **
Date:

_____
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)

▶ _____ (signature)
Attorney or party without attorney for:

** If a cross-complaint or Response (Family Law) seeking affirmative relief is on
file, the attorney for cross-complaint (respondent) must sign this consent
if required by Code of Civil Procedure section 581(i) or (j).

[ ] Plaintiff/Petitioner  [ ] Defendant/Respondent
[X] Cross - complainant

*(To be completed by clerk)*

3. [✓] Dismissal entered as requested on *(date)*:  AUG 12 2008

4. [ ] Dismissal entered on *(date)*:  as to only *(name)*:

5. [ ] Dismissal not entered as requested for the following reasons *(specify)*:

6. [ ] a  Attorney or party without attorney notified on *(date)*:  AUG 12 2008
   b  Attorney or party without attorney not notified. Filing party failed to provide
    [ ] a copy to conform  [ ] means to return conformed copy

DAVID H. YAMASAKI
Chief Executive Officer/Clerk

AUG 12 2008

G. Duarte

Date:  AUG 12 2008  Clerk, by _____, Deputy

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 (Rev. January 1, 2007)

**REQUEST FOR DISMISSAL**

Legal
Solutions
Plus

Code of Civil Procedure, § 581 et seq.;
Cal. Rules of Court, rule 3.1390

# EXHIBIT E

1  FRED M. BLUM, ESQ. (SBN 1015860
   RUBEN RUIZ, ESQ. (SBN 241729)
2  BASSI, MARTINI, EDLIN & BLUM LLP
   351 California Street, Suite 200
3  San Francisco, CA 94104
   Telephone:    (415) 397-9006
4  Facsimile:     (415) 397-1339

5  Attorneys for Defendant
   GEOSTAR CORPORATION, GEOSTAR FINANCIAL SERVICES CORPORATION, AND
6  TONY FERGUSON

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF SANTA CLARA

10

11 PETER FORTENBAUGH and BETTY LEE, )   Case No. 107CV084507
   in their capacity as Trustees of THE PETER )
12 FORTENBAUGH TRUST, a California Trust, )  **GEOSTAR CORPORATION, GEOSTAR**
                                          )  **FINANCIAL SERVICES**
13             Plaintiffs,                 )  **CORPORATION, AND TONY**
                                          )  **FERGUSON'S NOTICE OF REMOVAL**
14        vs.                              )  **OF CASE TO FEDERAL COURT**
                                          )
15 CLASSICSTAR FINANCIAL SERVICES,         )
   INC., a Delaware Corporation, GEOSTAR   )  United States District Court- Northern District
16 CORPORATION, a Delaware Corporation,    )  of California
   GEOSTAR FINANCIAL SERVICES              )  Case No.
17 CORPORATION, a Delaware Corporation,    )
   TONY FERGUSON, an individual, and DOES  )
18 1 through 30, inclusive,                )
                                          )
19             Defendants.                 )

20 _____

21 **TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA IN**

22 **AND FOR THE COUNTY OF SANTA CLARA:**

23        PLEASE TAKE NOTICE that Defendants <u>GEOSTAR CORPORATION</u>, <u>GEOSTAR</u>

24 <u>FINANCIAL SERVICES CORPORATION</u>, and <u>TONY FERGUSON</u> (collectively "NEW

25 DEFENDANTS"), have filed a Notice of Removal of this action from this Court to the United

26 States District Court for the Northern District of California, 280 South 1st Street, San Jose,

27 California 95113. Attached hereto and incorporated herein by reference are true and correct

28 copies of that Notice of Removal, the supporting Declarations of Ruben Ruiz Milton J. Evans,

48989                                    1

1   Jr., and Tony Ferguson, Co-Defendant <u>CLASSICSTAR FINANCIAL SERVICES, INC.</u>'s

2   Joinder to Geostar Corporation, Geostar Financial Services Corporation, and Tony Ferguson's

3   Notice of Removal of Plaintiff's First Amended Complaint to Federal Court, and Geostar

4   Corporation, Geostar Financial Services Corporation, and Tony Ferguson's Request for Judicial

5   Notice.

6       The Superior Court of the State of California for the County of Santa Clara is hereby

7   advised to proceed no further with this matter unless and until the case is remanded.

8

9

10   Date:    August ___, 2008            BASSI, MARTINI, EDLIN & BLUM LLP

11

12                           By:_____

13                             RUBEN P. RUIZ
                            Attorneys for Defendant

14                             GEOSTAR CORPORATION, GEOSTAR
                            FINANCIAL SERVICES CORPORATION,

15                             AND TONY FERGUSON'S

16

17

18

19

20

21

22

23

24

25

26

27

28

Re: **PETER FORTENBAUGH and BETTY LEE, in their capacity as Trustees of THE PETER FORTENBAUGH TRUST, a California Trust v. CLASSICSTAR FINANCIAL SERVICES, INC., a Delaware Corporation and DOES 1 through 30, inclusive**
**Santa Clara County Superior Court Case No. 107CV084507**

### PROOF OF SERVICE – CCP §1013(a)(3)

STATE OF CALIFORNIA/COUNTY OF San Francisco

I am a citizen of the United States and an employee in the County of San Francisco. I am over the age of eighteen (18) years and not a party to the within action. My business address is BASSI, MARTINI, EDLIN & BLUM LLP, 351 California Street, Suite 200, San Francisco, California 94104.

On the date set forth below, I served the within:

**DECLARATION OF RUBEN RUIZ IN SUPPORT OF DEFENDANTS GEOSTAR CORPORATION, GEOSTAR FINANCIAL SERVICES CORPORATION, AND TONY FERGUSON'S NOTICE FOR REMOVAL TO FEDERAL COURT**

on the following parties:

HOWARD RICE, et al.
Jeremy Kamras, Esq.
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4021

___**X**___ **BY PERSONAL SERVICE**: I caused a copy of said documents to be hand delivered to the interested party at the address set forth above.

_____ **BY MAIL**: I caused such envelope to be deposited in the mail at San Francisco, California. I am readily familiar with the firm's practice for collection and processing of correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business.

_____ **BY FEDERAL EXPRESS**: I caused such envelope to be deposited in the appropriate Federal Express envelope, to the Federal Express office located at 120 Bush Street, San Francisco, California 94104, to be delivered by the next business day. I am readily familiar with the firm's practice for collection and processing of correspondence for transmittal by Federal Express. It is deposited with Federal Express on that same day in the ordinary course of business.

_____ **BY FACSIMILE**: I caused said documents to be sent via facsimile to the interested party at the facsimile number set forth below.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on August 14, 2008, at San Francisco, California.

_____
ALISHA C. PEMBER

50637

1